## DAVID BOOTH'S ADMINISTRATORS *vs.* ISAAC NORTHROP.

Under the statute (Rev. Stat., tit. 1, § 80,) which provides that if any plaintiff
shall die during the pendency of a suit, his administrator may enter and
prosecute the suit, if it be one which might have been originally instituted by
the administrator, the action will survive if any of the causes of action de-
clared on could have been prosecuted by the administrator, even though
some of the causes of action declared on could not have been.

The former should be treated as if they were the only causes of action set forth
in the declaration, and the common law principle should be applied to the
latter and the suit as to them should abate.

And where the defendant does not procure a formal abatement of the suit as to
the latter, but suffers it to proceed as to both, and a general verdict is ren-
dered, the court will not arrest judgment, but will presume that the evidence
sustained the counts on the causes of action which survive, and that the ver-
dict was given on those counts alone.

In determining whether an action survives, it is immaterial whether its form
be in tort or in contract, provided the cause of action is founded on contract.

An action for a false warranty, although in form an action in tort, is yet
founded on the contract of warranty, and therefore is not abated by the death
of the plaintiff during its pendency.

In an action for a false warranty it is wholly immaterial whether there be an
allegation of the *scienter*, and if made it may be disregarded. The grava-
men of the action is the breach of the warranty, and the plaintiff may re-
cover on proof merely of the warranty and the breach.

ACTION on the case for false warranty and fraud in the ex-
change of cattle, instituted originally by David Booth, and
afterwards prosecuted by his administrators.

The declaration contained three counts. In the first the
plaintiff declared that " at the request of the defendant he
bargained with him to exchange a certain yoke of brindle
oxen, belonging to the plaintiff, for a certain yoke of red
oxen belonging to the defendant, and the sum of $18 in
money, which the defendant then and there paid to the
plaintiff; and that the defendant then and there contriving
and intending to cheat and defraud the plaintiff by falsely
and fraudulently warranting his said yoke of red oxen to be
orderly, exchanged the same, together with said sum of $18,
with the plaintiff, for his said brindle oxen, when in truth the
said oxen of the defendant, at the time of said exchange and
ever since, were and have been, not orderly, but unruly and

such as can not be restrained by lawful fences, or otherwise ; and the plaintiff says that the defendant falsely and fraudulently deceived him the plaintiff in said exchange of oxen." The second and third counts were for the deceit of the defendant in the exchange of the oxen.

During the pendency of the action in the superior court the plaintiff died and his administrators entered and prosecuted the suit. The case was afterwards tried to the jury on the general issue, and a verdict rendered for the plaintiff. The defendant then moved in arrest of judgment on the ground that the action was abated by the death of the plaintiff, and did not survive to his administrators. The question arising on this motion was reserved for the advice of this court. The defendant also moved for a new trial upon exceptions taken to the charge of the court, but the motion was not pursued in this court.

*Graves*, in support of the motion.

The action clearly could not survive at.common law. It survives, if at all, only by force of our statute. (Rev. Stat., tit. 1, § 80.) That statute provides only, that on the death of a plaintiff during the pendency of a suit, his administrator may enter and prosecute the suit, where it might originally have been prosecuted by the administrator. Could this suit have been originally prosecuted by the administrator? We claim that it could not. The action is one of tort, founded on a false warranty and fraud. The action is purely of a personal nature, like any other action for a personal injury, and the right of action at common law would have died with the person. But the act passed in 1848, since the statute above referred to, gives a construction to the latter statute. That act provides that a right of action for injuries to property, real and personal, shall survive to the administrator. It is clearly implied that such rights of action would not have survived at common law or under the statute. The property intended here is specific property that is injured by a wrongful act. It does not intend mere damage to a party which may in a general way reduce the amount of his

estate. The statute of Massachusetts on this subject is much like ours. It provides that actions of trespass and trespass on the case for injuries to real and personal estate, shall survive; and yet it was held in *Reed* v. *Hatch,* 19 Pick., 47, that an action of fraud does not survive under that statute. If the legislature intended that such an action as this should survive, it would have been very easy for it to have expressed that intent. It could easily have allowed all rights of action to survive, if it had not seen it best to make the limitation which it has done.

*Sanford,* contra.

The statute which gives to administrators the right to enter and prosecute after the death of a plaintiff should be liberally construed, as it is remedial. The mischief of the old law which it was intended to remedy, was the injustice done by the abatement of suits in such case. Gould's Pl., chap. 5, § 90. Statutes have been passed in England and in this country for the purpose of remedying this evil, and the courts have in all cases been inclined to give them such a construction as will extend the remedy. 1 Chitty Pl., 61. The statute of 1848 seems intended to embrace all kinds of injuries to the person, reputation and property, and to the person of the wife, child and servant. Here the injury was clearly one to the property of the plaintiff. It reduced his estate and diminished the assets that would have gone into the hands of the administrator. *Nettles* v. *D'Oyley,* 2 Brev., 27. *Arnold* v. *Lanier,* 1 Car. Law Repos., 529. The count upon the false warranty, although in form an action of tort, is yet none the less founded on a contract, and the cause of action is not the fraud committed, but the breach of the contract of warranty. The breach of this contract would be a cause of action that would survive to the administrator.

STORRS, C. J. The motion for a new trial in this case being abandoned by the defendant, it is unnecessary to consider any of the points which it might involve. The only question before us is the one which has been made on the motion in

arrest of judgment; namely, whether the death of the origi-
nal plaintiff, during the pendency of this suit, prevented it
from being prosecuted further by his administrators.

By the rules of the common law an action is abated by the
death of the plaintiff or defendant, and can not be revived in
favor of their respective executors or administrators; and if
the cause of action survives it is necessary to bring a new
suit. But the 80th section of the act, for the regulation of
civil actions, (Rev. Stat , tit. 1, § 80,) provides, that if the
plaintiff, in any action pending in the superior court, shall
die before final judgment, the same shall not abate if it might
originally have been prosecuted by his executor or adminis-
trator, and that in such case the executor or administrator
may enter and prosecute the same in his own name. If,
therefore, any of the causes of action described in the several
counts of the declaration in this suit might have been origi-
nally prosecuted by the administrators of the plaintiff, the
suit, in regard to such causes of action, was in our opinion
properly prosecuted by those administrators, although none
of the other causes of action declared on were of such a
nature that either the common law or the statute would
allow the action to be prosecuted for them after the death of
the plaintiff. No good reason can be given why, under that
statute, the abatement of the action by his death as to some
only of the causes of action for which it was brought, should
have the further effect of destroying it as to other causes of
action for which it was also brought and which could have
been originally prosecuted by his representative. In regard
to the latter causes of action the suit obviously should stand
on the same ground, and be allowed to be prosecuted under
the statute by such representative, as if they were the only
causes of action set forth in the declaration, while, as to the
other causes of action not embraced in the statute, the com-
mon law principle should be applied to them, and the suit,
as to them, should be deemed to be abated. The writ and
declaration are plainly divisible in respect to the several
counts or causes of action set out in the declaration, and
may well stand as to those which are sustained and allowed

Booth *v.* Northrop

to be prosecuted by the statute, and be abated as to the others. If, for any of the causes of action declared on in this case, an action could have been originally brought by the administrator of the plaintiff, the suit, on the death of the latter, ought not to stand in a worse condition as to them, than if the administrator had originally brought the suit for those causes of action and also for others which it was not competent for him to prosecute, in which case it could not be successfully claimed that the action would fail as to any except the latter. And if, in the present case, the suit could have been prosecuted for some of the causes of action declared on, but not for the others, and the defendant did not formally cause the writ to be abated as to the latter, but suffered the suit to proceed as to both, the court would not, after verdict, arrest the judgment, but would presume that the evidence sustained the counts on the causes of action which survived, and that the verdict was given on those counts alone ; on the same principle upon which our courts, contrary to the rule which prevails in England, sustain a judgment on a declaration, some of the counts of which are good and others bad. We do not consider it necessary, in the present case, to determine whether the causes of action in the last two counts of the declaration are of such a character that an action on them might be originally brought by the administrators of Booth, the original plaintiff, so that, under the statute which has been mentioned, the suit as to them might be prosecuted after his death by those administrators, because we are clearly of the opinion that the first count is for a cause of action for which a suit might originally have been brought by them, and that consequently, in accordance with the views we have expressed, they might prosecute this suit as to that cause of action, and therefore that judgment should not be arrested.

It is a familiar and well settled principle, that, upon the death of either of the parties to a contract, the cause of action upon it survives to and against his executors and administrators. The first count in this declaration is in tort for a breach of warranty on the exchange of the cattle of the defend-

ant for those of the plaintiff, and is precisely in conformity to the precedents in actions in form *ex delicto* for what is termed a deceit by means of a false warranty, excepting that in those precedents a *scienter* is usually alleged, whereas in this case it is omitted—it not being averred that the defendant, at the time of the exchange, knew that his cattle did not answer the warranty. The omission of a *scienter* would seem to evince, more palpably than if it were inserted, that the cause of action in this count is a breach of warranty merely, and not a fraud; that the action is brought on a contract as such, viz., a contract of warranty; and that therefore the gravamen of the count is merely the breach of a contract, and not fraud. But it is not necessary at this day to consider the effect of the averment or omission of a *scienter* in cases of this description; for it has been too long and decisively settled to be now a subject of dispute, that in a declaration on a false warranty, like the first count in this case, it is wholly immaterial whether there be an allegation of a *scienter* or not; that if there is such an averment it may be disregarded as having been unnecessarily made; that the gravamen of the action is a breach of warranty and not a fraud practised by the defendant on the plaintiff by means of false representations fraudulently made; and that therefore the plaintiff is entitled to recover on such a count, on proof of the alleged warranty and a breach of it, without adducing any evidence of the *scienter*. In the leading case of *Williamson* v. *Allison*, (2 East., 446,) where the declaration was framed *ex delicto*, for a breach of warranty, in a particular respect, of the quality of goods sold by the defendant to the plaintiff, and alleged that the defendant knew that the goods were not such as they were warranted to be, it was decided that that allegation was unnecessary and need not be proved; and a verdict for the plaintiff, on proof of the warranty and that it was false, was established on that ground.

Lord Ellenborough says, that the warranty is the material averment, and it is sufficient to prove that broken to establish the deceit, which consists, in that kind of action, of the breach of the warranty; and also, that whether the action for a

false warranty be in tort as for a deceit, as was the ancient practice, or in assumpsit, which is a concurrent form of remedy in such cases, and has been introduced in modern times comparatively, the form of the action does not vary the proof: and Lawrence, J., after stating that since the form of declaring in assumpsit had been introduced he had drawn a hundred declarations on the same subject in tort, and referring to the precedents of that sort in the books, where a warranty is stated, says, that these are not drawn as laying the gravamen on the deceit, but on the warranty broken; and agrees that the *scienter* may be struck out altogether and the plaintiff still maintain his action in tort on warranty broken : and Le Blanc, J., says, that the insertion or omission of the fact of the defendant's knowledge that the wine was unfit for sale according to the warranty makes no difference in the cause of action declared on, and therefore it may be struck out altogether. The doctrine of this case has been frequently recognized and acted on, and has never to our knowledge been departed from or even questioned by the courts. A breach of contract, the contract of warranty, is therefore the injury complained of in the first count in this case ; and a cause of action for such an injury survives to executors and administrators.

On the question of survivorship, we consider it immaterial whether the form of the remedy adopted is in tort or in contract, provided the cause of action is founded on a contract. The form of action brought to redress a wrong, sometimes, and indeed usually, indicates its nature, whether as arising independently of contract or not; but this is far from being invariably so, there being many cases where the action, the cause of which grows out of a breach of contract, may be in form either *ex delicto,* as in case, or *ex contractu,* as in assumpsit. In determining whether a cause of action survives to the personal representative, the real nature of the injury or claim ought to be regarded, and not the form of the remedy by which it is sought to be redressed or enforced. 1 Chitty Pl., 68, 90, 134, 135,

Judgment therefore in this case should not be arrested.

In this opinion the other judges concurred.

Motion in arrest overruled.

————•◄●►•————

## SUPREME COURT OF ERRORS.

### HARTFORD COUNTY, SEPTEMBER TERM, 1858.

Present,

Storrs, C. J., Hinman, Ellsworth, Sanford and Seymour, Js.*