THE STATE v. FOSTER.

1. **Criminal law:** EMBEZZLEMENT. Where the defendant, under an agreement between him and the prosecutor, received from the latter a watch which he was to trade for a wagon, and was to receive $5 as a compensation for his services, it was *held*, that this constituted such an employment as rendered the defendant guilty of embezzlement for converting the watch to his own use.

2. **New trial:** NEWLY-DISCOVERED EVIDENCE. In a prosecution for embezzling a watch, the State gave evidence that the watch was of the value of $95. No evidence of value was given by defendant. After the trial evidence was discovered to the effect that the value of the watch was only $10 or $15, which would reduce the offense from a felony to a misdemeanor. It not appearing that any fault or negligence could properly be attributable to defendant or his counsel, a new trial was properly ordered.

*Appeal from Marion District Court.*

THURSDAY, OCTOBER 23.

The defendant was indicted and convicted of embezzlement, and appeals to this court. The facts of the case appear in the opinion.

*Stone & Ayres* for the appellant.

*M. E. Cutts,* Attorney General, for the State.

BECK, Ch. J. — 1. The second count of the indictment upon which defendant was convicted, charges that he, being "the servant and agent of one P. B. Furlong, and being over the age of sixteen years, did * * * by virtue of his said employment, have, receive and take into his possession and under his control, one watch of the value of $95, the property * * * of P. B. Furlong, his employer, * * * and the said watch * * * without the consent of his said employer, did feloniously embezzle and fraudulently convert to his own use." The statute upon which this indictment was found, is as follow :

<span style="margin">1. CRIMINAL LAW.</span>

"If any officer, agent, clerk or servant of any incorporated company ; or if any clerk, agent or servant of a co-partnership ; or of (if) any person over the age of sixteen years, embezzle and fraudulently convert to his own use, or take and secrete, with intent to convert to his own use, without the consent of his employer or master, any money or property of another, which has come to his possession, or is under his care by virtue of such employment, he is guilty of larceny, and shall be punished accordingly." Rev., § 4244.

There was evidence tending to prove that, by an agreement between Furlong and the defendant, the latter undertook, in consideration of $5, to be paid him by the former, to trade a watch, the property of the former, for a wagon. Defendant was to find some one owning a wagon, who would trade it for a watch, and make the exchange for Furlong. Under this agreement the watch was delivered to the defendant, who failed to make the trade, and converted the watch to his own use. The court instructed the jury upon this evidence, as follows:

" 7. If you find that Furlong and the accused made an agreement whereby the accused contracted to receive the watch and trade it for a two-horse wagon for Furlong, for which he was to receive a compensation of $5, this is sufficient to sustain the averments that the defendant was in the employment of said Furlong, and that he received the watch by virtue of this employment."

It is insisted that this instruction and the view of the case upon which it is based, are erroneous, inasmuch as no such relation, employment, is shown to have existed between the accused and Furlong, as is a necessary ingredient of the crime of embezzlement, under the statute.

It is insisted, in a very able argument by defendant's counsel, that the transaction between the parties disclosed by the evidence and contemplated by the instructions of the court, constitutes an ordinary bailment, and could not, therefore, be the foundation of the crime of embezzlement.

It may be suggested before proceeding to the discussion of the question presented, that the authorities cited, and others we have been able to consult, throw little light upon the subject from the fact that they interpret, and apply to, statutes not entirely similar to the law of this State under which the indictment was found. Upon the construction of this enactment depends the solution of the question before us. Its language necessary to be interpreted, correcting the obvious typographical error found therein, is this: " If any person over the age of sixteen years embezzle and fraudulently convert to his own use, * * * without the consent of his em-

ployer or master any money or property of another which has come to his possession, or is under his care by virtue of his employment, he is guilty," etc.

The words indicating the relation that must exist between the accused and another, which is a necessary ingredient of the offense, are "employer," "master," "employment." We will without notice of the word "master" consider the terms "employer" and "employment." They are not of the technical language of the law or of any science or pursuit, and must, therefore, be construed according to the context and the approved usuage of the language. Rev. § 29, p. 2.

The words are defined as follows: *Employment* — "the act of employing or using. 2. Occupation; business. 3. .Agency or service for another or for the public."

*Employer.* "One who employs; . one who engages or keeps in service."

The verb "employ," is defined as follows, when used with a human being either as its subject or object: "To engage in one's service; to use as an agent or substitute in transacting business; to commission and intrust with the management of one's affairs." — *Webster*.

It will be seen from the definition of these words that the statute contemplates the relation of agency, a contract for services, whereby the accused is bound to do or perform something in connection with the property embezzled, and that by virtue of such relation he acquired possession thereof. It by no means appears that the idea of bailment or bailee is excluded from these definitions, but without following the thought or relying upon it, we will inquire whether the evidence establishes a relation of agency or service existing between the accused and Furlong and whether such relation is contemplated by the instruction above quoted. We think it is in each. The watch was received under an agreement that the accused was to act for Furlong in making a contract of sale of the property, *i. e.* exchanging the watch for a wagon. Can it be doubted that any proper contract of sale within the scope of the accused's authority would have bound Furlong? Certainly

he would have been bound thereby; and one of the ingredients of the transaction creating it a binding contract upon him, would have been the relation of agency existing between him and the accused. We conclude that the idea of agency is clearly expressed both by the language of the indictment and instructions, and the relation is established by the evidence, or rather that there was evidence tending to establish it rendering the instruction relevant and proper, upon which the jury may well have found its existence.

We, therefore, find no error upon this point in the rulings of the court upon the instructions and the motion assailing the indictment, because the facts alleged do not constitute an offense under the statute. See upon this point 2 Whart. Am. Crim. Law, § 1936; *The People* v. *Dalton*, 15 Wend. 581; 3 Arch. Crim. Prac. and Plead. 450, 444, and notes.

II. A motion for a new trial because of newly-discovered evidence was overruled. We think it should have been sustained.

Evidence as to the character of the watch and its value, showing it to be worth $95, was given by the state. No evidence upon this point was introduced by the accused. His own affidavit and that of his counsel we think show the fact that they were not in possession at the time of the trial, of the names of any witnesses by whom the evidence on the part of the State as to the value and character of the property, could have been contradicted. It is shown by the affidavits of these witnesses that the watch is of base metal and only of the value of $10 or $15. It does not appear that any fault or negligence can be properly attributed to defendant or his counsel in not introducing the evidence of these or of other witnesses upon the point at the trial; in fact the showing made is such that we must conclude that they were unable from ignorance of the names of the witnesses to do so.

2. NEW TRIAL.

The attorney-general suggests that the evidence claimed to be newly discovered, is but cumulative on the ground that one of the witnesses of the State does not give as high descrip-

tion of the character of the watch as the prosecuting witness. But nothing was said by him as to its value, and defendant's counsel in the exercise of proper prudence may well have feared to venture upon an attempt to establish a point in the defense by one of the state's witnesses.

The importance of the evidence cannot be questioned, for it is upon a fact which, if established, would reduce the offense from a felony to a misdemeanor.

For the error of the district court in overruling the motion for a new trial on the ground of newly-discovered evidence the judgment is

Reversed.