CITY OF GROTON *v.* COMMISSION ON HUMAN RIGHTS AND OPPORTUNITIES

PIONEER HOSE COMPANY No. 1, INC. *v.* COMMISSION ON HUMAN RIGHTS AND OPPORTUNITIES

HOUSE, C. J., COTTER, LOISELLE, MACDONALD and BOGDANSKI, Js.

Argued March 7—decision released July 8, 1975

*Bernard F. McGovern, Jr.,* assistant attorney general, with whom, on the brief, were *Carl R. Ajello,* attorney general, and *F. Michael Ahern,* assistant attorney general, for the appellant (defendant in both cases).

*Thomas B. Wilson,* with whom, on the brief, was *James F. Brennan, Jr.,* for the appellee (plaintiff in the first case).

*Joseph E. Moukawsher,* for the appellee (plaintiff in the second case).

MACDONALD, J. These two appeals from a judgment rendered by the Superior Court sustaining appeals by Pioneer Hose Company No. 1, hereinafter Pioneer, and the city of Groton, hereinafter Groton, from an order of the Commission on Human Rights and Opportunities, hereinafter commission, have been ordered consolidated upon motion of the parties. The basic facts are not in dispute and, together with the relevant procedural background, have been fully set forth in the memorandum of decision filed by the trial court and in the statement of facts and finding filed by the commission.

The appeals arise from a complaint dated January 9, 1968, filed by Charles M. Richardson, hereinafter Richardson, with the commission against Pioneer alleging an act of discrimination in that Pioneer denied Richardson membership in the volunteer fire company because of his race in violation of General Statutes § 31-126. A hearing tribunal appointed by the commission held a hearing commencing on September 18, 1968, and continuing on various days thereafter until terminated on December 10, 1968. The commission rendered its finding on May 13, 1969, and included in the facts which it found were the following: Pioneer is one of two organized volunteer fire companies in Groton. On October 11, 1967, Richardson, a resident of Groton, personally appeared at Pioneer's meeting room where he applied for and submitted an application for membership. The application form provided a space for the signature of the applicant's sponsor and when Richardson was advised by Donald S. Rollins, the foreman of Pioneer, that he needed a sponsor, Richardson asked if he might have a relative who was a fireman or member of the Mystic Fire Department sign as his sponsor. Richardson was advised that he could not since only a member of Pioneer could act as a sponsor. Nevertheless, Richardson submitted his application without a sponsor's signature and the application was accepted by Rollins. During that portion of the regular meeting of Pioneer when applications for new members were submitted, Richardson's application for membership was not read, as was customary. Instead, the membership was asked if anyone would sign his application, and upon receiving no response, the secretary was directed to return the application to Richardson, who was

notified by certified letter, dated October 17, 1967, that his application was not valid in that it lacked a sponsor's signature as required by the bylaws of the organization. In fact, the official bylaws contained no provision pertaining to any requirement for a sponsor's signature on an application for membership; however, for a long time prior to Richardson's application, the organization had customarily required a sponsor's signature as a prerequisite for membership. The application contained no inquiry concerning the applicant's competency or experience as a firefighter. Richardson was black, and there were no black members of Pioneer at the time Richardson made application, nor did it appear that there ever had been any black members of Pioneer.

On January 9, 1968, Richardson executed a complaint under oath and personally delivered it to a representative and investigator of the commission. The commission's representative did not actually bring the complaint to the commission's office until the next morning, January 10, 1968, ninety-one days after the meeting of October 11, 1967. That complaint was amended on April 24, 1968, joining Groton as a party, in addition to adding to the complaint a specific claim of a violation of § 53-34 as to both Pioneer and Groton. On September 18, 1968, and September 24, 1968, the complaint to the commission was again amended, the net effect of the amendments being to allege that Pioneer was an official or quasi-official agency of Groton, and to specify that Richardson was alleging discrimination under subsection (a) of § 31-126.

The hearing tribunal was of the opinion that the original complaint dated January 9, 1968, and as

amended on April 24, 1968, adding Groton as a party, was duly filed within the ninety-day filing limitation as then provided by § 31-127;[1] and further, that Pioneer, while assisting Groton's regularly constituted fire department in its fire fighting functions, was performing an essential governmental function, and, therefore, was an agent of Groton assisting it in carrying out its statutory duty of providing fire protection to its citizens. The tribunal finally concluded that the procedure of requiring an applicant to obtain a sponsor exclusively from among its own membership discriminated against blacks and other members of minority groups. On these bases the commission found that Pioneer and Groton violated General Statutes §§ 31-126 (a) and 53-34, as amended, and issued a cease and desist order as set forth in the footnote.[2]

The hearing tribunal did not conclude that Richardson was, in fact, excluded from membership because of his race; nor was there presented to the tribunal any direct evidence of discrimination because of race. Richardson stated in his complaint

---

[1] Section 31-127 has since been amended to provide one hundred and eighty days in which to file such complaints.

[2] "1. Pioneer Hose Company No. 1, Inc., the respondent herein, . . . [shall] cease and desist from the use of such membership procedures as require applicants for active membership in a volunteer fire company to provide a sponsor exclusively from within its own membership and any other procedures which effectively prevent membership in their organization solely because of race, creed or color.

"2. The city of Groton, Connecticut, the respondent herein, . . . [shall] cease and desist from furnishing any aid or comfort of whatever nature to the Pioneer Hose Company No. 1, Inc., as long as they shall continue to employ such membership procedures as require applicants for active membership in a volunteer fire company to provide a sponsor exclusively from within its own membership and any other procedures which effectively prevent membership in their organization solely because of race, creed or color."

dated January 9, 1968, that he believed his application for membership was not considered and accepted because of his race. However, he had earlier stated on October 19, 1967, that "it appears that I was turned down as a result of a lack of knowledge of the company's membership." In view of the finding and orders issued, it appears evident that the tribunal had abandoned its original claim that Richardson himself was denied membership because of his race and had substituted the broader claim of discrimination based on the procedures used by Pioneer in admitting new members, although proceeding in the context of the original Richardson complaint.

The plaintiffs appealed the tribunal's ruling to the Superior Court, which concluded that the commission was without jurisdiction to issue the cease and desist order against either plaintiff. The principal bases for this conclusion were the court's findings that the complaint to the commission, originally and as amended prior to the hearing, was defective in failing to refer to the specific subsection of General Statutes § 31-126 claimed to have been violated, and further that the complaint had not been filed within ninety days of the alleged act of discrimination, as required by then § 31-127. The court found the act of discrimination to be Pioneer's refusal to accept Richardson's application on October 11, 1967, and the filing date to be ninety-one days later, January 10, 1968, the date the complaint entered the offices of the commission. The court never discussed the substantive issues involved beyond the observation that no direct evidence of racial discrimination was presented to the hearing tribunal. The parties have assigned error in the

conclusions of the court, but we are constrained to deal with those issues which we find to have been raised within the context of this appeal.

Before the trial court and in this appeal the plaintiffs raised the issue, rejected by the tribunal, that the hearing should have terminated upon the death of Richardson. The appendices to Pioneer's brief and the commission's brief present an additional factual background which requires discussion. During the pendency of the hearing before the tribunal, on October 1, 1968, Richardson died, and the attorney general requested an appropriate postponement of the proceedings in a letter to Arthur L. Green, then director of the commission. In a further correspondence, dated October 15, 1968, assistant attorney general Robert L. Hirtle, Jr., who was then serving as attorney for the commission prosecuting the Richardson complaint, recommended the following to director Green: "Because of the unfortunate circumstances which have occurred, I am requesting that the Commission on Human Rights and Opportunities terminate the hearing now pending on the Richardson complaint as an unfair employment practice. However, I am also recommending that the hearing continue before the same tribunal as an investigation under Section 31-125 of the General Statutes, into the broader public issues raised in this matter. These issues are first; whether the Pioneer Hose Co. No. 1, Inc., of Groton is a public or quasi-public agency of the City of Groton and second; whether the by-laws of this volunteer fire company provide a procedure for discrimination against a Negro applicant for membership in violation of basic constitutional guarantees." Director Green rejected Attorney

Hirtle's recommendation on October 17, 1968, in a letter addressed to the attorney general, the relevant portions of which are printed in the footnote.[3]

The plaintiffs moved to dismiss the proceedings on November 25, 1968, when the hearing was resumed, because of Richardson's death. The tribunal denied the motions and the hearing proceeded to a final disposition. The plaintiffs included this

[3] Relevant portions of director Green's letter of October 17, 1968, to the attorney general: "I think it is unfortunate that the contents of . . . your letter [of October 15, 1968] were carried in the press, since in a discussion of recent date between Mr. Hirtle, Mr. Orenstein and me it was decided that the suggestion by Mr. Hirtle of continuing the Pioneer Hose matter in an altered investigatory form was to be taken up by me with our Commissioners. At a meeting of our Enforcement Committee on Wednesday, October 9, 1968, *the Committee was unanimous and adamant in the conclusion that the Richardson hearing should continue in its present form, seeking a binding order from the tribunal.* The Committee was particularly concerned that altering the proceedings in the form suggested by Mr. Hirtle would result, at best, in this Commission's furnishing recommendations to the city of Groton which have already been rejected.

"At a meeting of the full Commission on October 16, 1968 the entire Commission was similarly unanimous in the resolve to carry the Richardson hearing to a conclusion in its present form.

.        .        .        .        .

"The Commission intends to continue under those sections of the law which can lead to a binding order by the tribunal rather than a general investigation of broad issues. While the order sought might, before Mr. Richardson's death, have been that the city and fire company cease and desist from refusing membership specifically to him because of his color, the order to be sought from this point should be that the city and fire company cease and desist from any requirement for a prior recommendation from a member of the company, each and every one of whom is white, and the subjection of an applicant to a blackball system when dealing with persons seeking membership in a publicly financed fire company. The legal bases, as stated in the original complaint, are that such practice violates either or both of the Connecticut Fair Employment Practices Law and Section 53-34 of the General Statutes concerning the denial of constitutionally protected rights." (Emphasis added.)

as a ground for their appeal to the Superior Court and Pioneer has discussed the issue in its brief. The court concluded that "[a]lthough the complainant's right to personal relief did not survive, the public's interest and right to relief would not be extinguished by the death of a complainant under a valid proceeding." We cannot agree with the court in this conclusion.

Chapter 563 of the General Statutes (Sup. 1969), §§ 31-122 to 31-128, entitled Fair Employment Practices, delineates the power granted to the commission and the manner in which that power may be invoked. Specifically, under § 31-125 (e) the commission is granted the power "to receive, initiate, investigate and mediate complaints of unfair employment practices." The relevant statutes and the related regulations delineate the trifurcated manner of invoking the commission's remedial powers as follows: (1) "Any person claiming to be aggrieved by an alleged unfair employment practice may, by himself or his attorney, make, sign and file with the commission a complaint in writing under oath." § 31-127; (2) "The commission, whenever it has reason to believe that any person has been engaged or is engaged in an unfair employment practice, may issue a complaint." Ibid. (3) "Any employer whose employees, or any of them, refuse or threaten to refuse to comply with the provisions of this chapter may file with the commission a written complaint under oath asking for assistance by conciliation or other remedial action." Ibid. See Regs., Conn. State Agencies (Civil Rights Commission—Fair Employment Practices Act—Procedure) § 31-125-3.

Procedures (1) and (2) may apply to similar situations, that is, where an unfair employment

practice is claimed to exist, the commission or a person claiming to be aggrieved by that practice may file a complaint to review that practice. In the present case review was sought by means of procedure (1), on the personal complaint of Richardson. The relief that could be afforded, however, is dictated by the limits of the complaint. *Veeder-Root Co.* v. *Commission on Human Rights & Opportunities,* 165 Conn. 318, 334 A.2d 443. In *Veeder-Root* the complainant claimed to be a person aggrieved by a practice of her employer which, she alleged, constituted discrimination against her on the basis of sex. The hearing tribunal, appointed to conduct a hearing on the complaint, issued an order directing Veeder-Root to cease and desist from department-wide sex discrimination. The state referee appointed to hear Veeder-Root's appeal from the hearing tribunal's order modified that part of the order to grant relief only to the individual complainant and not to the entire department in which the complainant was employed. In affirming[4] this action by the referee we stated (p. 327): "The plaintiff claims that the order went beyond the scope of the pleadings, and in this we must agree. As stated by the referee, 'the clear import of the complaint was that . . . [Hilda Moe], as one of the women in the department, was, without any bona fide occupational qualification or need, being discriminated against in compensation because of her sex. . . . The complaint could not properly be construed as an attempt to represent, or speak for, the other women in the department as a class.' "

Continuing with a discussion of procedural problems in *Veeder-Root* similar to those involved

---

[4] Error was found on other grounds.

here, we stated (p. 328): "Furthermore, in its answer the plaintiff denied 'any violation of Section 31-126, subsection (a), of Chapter 563 of the General Statutes of Connecticut as amended *with respect to Complainant Hilda G. Moe* [emphasis added].' The issue was thus framed by the pleadings — was there any sex discrimination in department 99 in the plaintiff's plant directed against Hilda Moe? As the hearing progressed and it became apparent that sex discrimination existed in department 99 on a department-wide basis, *the statute, § 31-127, provided the means whereby the commission could have either amended the complaint to include an attack on the department-wide discrimination or issued a new complaint in the name of the commission containing such an allegation.* Had the commission taken either of these actions there would have been no question of the issues that were being litigated as involving department-wide discrimination and of the scope of the order that the commission might issue. Instead, no amendment or new complaint was issued with the result that the commission and the plaintiff are now at odds about what issues were actually litigated and about the legality of the commission's order." (Emphasis added.)

In language peculiarly applicable to the case before us, we concluded in *Veeder-Root* (p. 329): "Section 31-127 clearly provides that the respondent appear before the hearing tribunal in order 'to answer the charges of . . . [the] complaint.' *This means that the charges in the complaint frame the issues to be decided by the hearing tribunal.* Since the individual complaint of Hilda Moe, fairly read, did not provide the respondent, the plaintiff, with notice of the scope of the action *and since the com-*

*mission, under § 31-127 of the General Statutes, was empowered to issue a new complaint attacking department-wide sex discrimination which would have apprised the plaintiff of the scope of the action,* we conclude that the plaintiff was justified in its belief that the commission's attack was directed solely at sex discrimination as applied only to Hilda Moe. It was, therefore, improper for the commission to issue an order requiring the plaintiff to cease and desist from department-wide discrimination." (Emphasis added.)

Upon Richardson's death the commission could have amended the complaint as it was empowered to do under §§ 31-125 and 31-127. Instead, it chose to ignore the advice of the assistant attorney general previously quoted and proceeded to seek an order of general applicability upon the personal complaint of Richardson, then deceased. Authority to make reasonable amendments to a complaint, even during the hearing, is granted under § 31-127 of the General Statutes and § 31-125-9 of the regulations. The commission clearly is empowered by statute to prosecute complaints on issues of public interest but it must strictly comply with the governing statutes and the regulations it has caused to be issued.

If the commission prosecutes an alleged unfair employment practice upon the complaint of an individual without initiating its own, separate complaint, and absent a proper amendment authorizing broader relief, the tribunal may fashion a remedy only within the confines of the complaint and afford relief only to the individual complainant. Upon the death of an individual complainant the tribunal is rendered powerless to issue an award in conformity

with the decedent's personal complaint. Since the commission failed to amend the complaint to substitute itself as complainant seeking relief in the interest of the general public, it was error for the tribunal to deny the plaintiffs' timely motions to dismiss. Despite the fact that this precise issue was not specifically assigned as error, this court may consider the question of lack of jurisdiction, whether or not it is raised by the parties; it cannot be waived by silence of the parties or by the failure to raise the issue in the trial court. *Simmons* v. *State,* 160 Conn. 492, 503, 280 A.2d 351; *Sheridan* v. *Planning Board,* 159 Conn. 1, 10, 266 A.2d 396; *Tellier* v. *Zarnowski,* 157 Conn. 370, 373, 254 A.2d 568; *Gannon* v. *Sanders,* 157 Conn. 1, 6, 244 A.2d 397. The court was correct in its judgment sustaining the appeal of the plaintiffs. We need not be concerned with the validity of the court's theory in support of that judgment; since the judgment is correct it must stand. *Wenzel* v. *Danbury,* 152 Conn. 675, 677, 211 A.2d 683; *Hoffman* v. *Kelly,* 138 Conn. 614, 617, 88 A.2d 382.

There is no error.

In this opinion HOUSE, C. J., and LOISELLE, J., concurred.

COTTER, J. (concurring). I concur in the result reached by the majority.

## I

I agree that, under § 31-127 of the General Statutes, charges in a complaint filed pursuant to our Fair Employment Practices Act "frame the issues to be decided by the hearing tribunal"; *Veeder-Root*

*Co.* v. *Commission on Human Rights & Opportunities,* 165 Conn. 318, 329, 334 A.2d 443, and that favorable relief granted by the hearing tribunal to a complainant "is dictated by the limits of the complaint." I further agree, as stated in the majority opinion in discussing *Veeder-Root,* that the commission on human rights and opportunities may, under § 31-127, either amend the complaint to include an attack on department-wide discrimination or issue a new complaint in its own name containing such an allegation, the effect of either of which action being to enlarge the scope of the order of relief which the hearing tribunal might issue.

The commission proceeded in a manner consistent with these requirements. Consequently, so much of the proceedings as involved allegations of violations of § 31-126 (a) affecting persons other than Richardson survived the death of the original complainant. The commission's "amendment" to Richardson's amended complaint, signed in its name and filed on September 18, 1968, before Richardson died, alleged not only that article 5, § 1 of Pioneer's bylaws "when implemented under the facts in the instant case effectively denies to the complainant, Charles M. Richardson, his rights guaranteed by Sec. 31-126 and 53-34," later changed to read 31-126 (a) and 53-34, but also that article 5, § 1 of those bylaws "sets forth a procedure which is a vehicle of discrimination" and "is an improper standard to be used in the conduct of a public agency." These two allegations, ordered to be filed and properly in the case, constituted charges of discrimination far-reaching in their impact, affecting not merely Richardson. The tribunal was justified, in a procedural sense at least, in deciding that the complaint of discrimination ultimately before it

as amended by the commission was broad enough to authorize the issuance of similarly broad relief, viz., the cease and desist orders.

The "net effect" of the amendments filed by the commission was not merely "to allege that Pioneer was an official or quasi-official agency of Groton, and to specify that Richardson was alleging discrimination under subsection (a) of § 31-126." Rather, their effect was to enlarge the issues to be decided by the hearing tribunal and to serve as the basis for the issuance of relief applicable not only to Richardson but to persons who might be similarly affected by the allegedly discriminatory practices of Pioneer.

It is agreed, however, that the proceedings below were rendered moot with respect to the allegations of violations of § 31-126 (a) in the amended complaint affecting Richardson personally. An action may survive in some respects but abate as to others. *Booth* v. *Northrop,* 27 Conn. 325, 328. Connecticut's survival-of-actions statute provides that "[n]o civil action or proceeding shall abate by reason of the death of any party thereto." General Statutes § 52-599. To survive the death of a party in such action or proceeding, however, the statute provides for the executor or administrator of the decedent to continue the case on behalf of the decedent. Ibid. The record in this case does not disclose any administrator or executor of Richardson's having taken any such action. In addition, the statute further states that its provisions "shall not apply to any . . . civil action or proceeding the purpose or object of which is defeated or rendered useless by the death of any party thereto." Ibid. To the extent that one of the purposes of the proceeding below as

indicated in the amended complaint was to afford Richardson specific relief available under the Fair Employment Practices Act, it was rendered useless by his death. Accordingly, the saving provisions of the survival-of-actions statute did not apply to this aspect of the proceedings. Nonetheless, as indicated above, this circumstance had no effect on the continuing vitality of the proceedings with respect to the allegations in the amended complaint of violations of § 31-126 (a) affecting persons other than Richardson.

In addition, that part of the action which involved a claimed violation of General Statutes § 53-34 also abated with the death of Richardson. Section 53-34 states that "[a]ny person who subjects, or causes to be subjected, any other person to the deprivation of any rights, privileges or immunities, secured or protected by the constitution or laws of this state or of the United States, on account of alienage, color or race, shall be fined not more than one thousand dollars or imprisoned not more than one year or both."[1] Although violations of the statute constitute criminal offenses and subject the offender to penal sanctions; *Zucker* v. *Vogt,* 329 F.2d 426 (2d Cir.); *Waterbury* v. *Commission on Human Rights & Opportunities,* 160 Conn. 226, 233, 278 A.2d 771; section 53-36 also provides that, in addition to the penalties provided under § 53-34, any person claiming to be aggrieved by a violation of this section may "make, sign and file with the commission on human rights and opportunities a complaint . . . which shall state the circumstances of such violation and the particulars thereof and shall contain such other information as may be

---

[1] The statute has since been amended to include a prohibition on deprivation of rights on account of sex. Public Act No. 74-80.

required by the commission." Thereupon, under
§ 53-36, the commission may proceed upon "such
complaint in the same manner and with the same
powers as provided in chapter 563 in the case of
unfair employment practices." When this proce-
dure is followed, as it was in this case, the commis-
sion is authorized to provide only such nonpenal
remedies as are within its powers under the Fair
Employment Practices Act, inasmuch as § 53-36
states that the provisions of *that* act "as to the
powers, duties and rights of the commission, the
complainant, the court, the attorney general, the
counsel for the commission and the respondent shall
apply to any proceeding under the provisions of this
section." Essentially, then, § 53-36 confers a right
upon a person injured by a criminal offense under
the provisions of § 53-34 to the nonpenal remedies
available under the Fair Employment Practices
Act. The purpose of § 53-36, as its opening words
suggest ("In addition to the penalties provided for
violation of sections 53-34 . . . [and] 53-35") was
to afford a secondary level of relief—civil relief—
to persons injured by Civil Rights Act violations;
its purpose was not to amend the Fair Employment
Practices Act by placing at the disposal of the com-
mission on civil rights an entirely new substantive
cause of action. That this is so is confirmed by the
fact that under § 53-36 the commission "may issue
a complaint" on its own behalf only when it has rea-
son to believe that § 53-35 or § 53-35a has been or
is being violated, not when it has reason to believe
that § 53-34 has been or is being violated. Signifi-
cantly, the survival-of-actions statute specifically
states that its provisions allowing proceedings to
remain unaffected by the death of a party "shall
not apply to any cause or right of action or to any

civil action or proceeding the purpose or object of which is defeated or rendered useless by the death of any party thereto." General Statutes § 52-599. The remedies which the commission is empowered to provide under § 31-127—for example, the issuance of a cease and desist order, and the ordering of affirmative action, including, but not limited to, the hiring or reinstatement of complaining employees—would have benefited Richardson personally only while he was alive, so that the "purpose" of any proceeding undertaken pursuant to § 53-36 was rendered "useless" by his death, within the contemplation of our survival-of-actions statute. In the absence of any other statutory provision or rule of law authorizing the survival of proceedings conducted by the commission upon the death of the individual claimed to have been aggrieved by an alleged violation of § 53-34, such proceeding must be deemed to have abated with that individual's death. See 1 C.J.S., Abatement and Revival, §§ 132, 133, 134; 1 Am. Jur. 2d, Abatement, Survival, and Revival, §§ 51 et seq.; note, 88 A.L.R.2d 1153, 1156.

## II

The filing of the complaint on January 10, 1968, against Pioneer did not constitute a filing against Groton at that time. The provisions of the Fair Employment Practices Act governing procedure thereunder are precise and unambiguous in specifying that a complaint arising under the act must state "the name and address of the person, employer, labor organization or employment agency alleged to have committed the unfair employment practice" and must "set forth the particulars thereof and contain such other information as may

be required by the commission." General Statutes § 31-127. The complaint filed on January 10, 1968, mentioned the name and address of Pioneer only, and did not contain the name and address of Groton. Furthermore, even if, as the defendant argues, an "agency" relationship existed between Groton and Pioneer, the latter implementing the former's statutory duty of providing fire protection, Groton was still an entity distinguishable from Pioneer under the relevant definitional terms in the act for purposes of being named in a complaint arising thereunder.[2] Thus, the filing of the amended complaint on April 24, 1968, containing the name and address of Groton, represented, with respect to the city, the filing of an altogether new complaint which did not "relate back" to the filing of the complaint against Pioneer on January 10. *Kelsall* v. *Kelsall,* 139 Conn. 163, 165, 90 A.2d 878. However, under General Statutes § 31-127, complaints alleging violations of § 31-126 must be filed "within ninety days after the alleged act of discrimination." Even if, as the defendant argues, the limitation period commenced on October 19, 1967, the date on which Richardson received the letter returning his application, the filing of the complaint against Groton took place well beyond the statutory period. Accordingly, the commission lacked jurisdiction to hear the complaint against Groton. *Scovill Mfg. Co.* v. *Commission on Civil Rights,* 153 Conn. 170, 175-76, 215 A.2d 130.

---

[2] Under the act, "person" means "the state and all political subdivisions *and agencies thereof";* "employment agency" means "any *person* undertaking with or without compensation to procure employees or opportunities to work"; "employer" includes the state and all political subdivisions thereof and means "any *person* or employer with three or more persons in his employ." General Statutes § 31-122 (b), (c), (f). (Emphasis added.)

## III

The complaint filed against Pioneer, as amended, failed to allege an "unfair employment practice" engaged in by Pioneer within the contemplation of General Statutes § 31-126 (a), contrary to what the commission has argued. The statute states, in pertinent part, that "[i]t shall be an unfair employment practice . . . for an employer, by himself or his agent, . . . because of the race . . . of any individual, to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against him in compensation or in terms, conditions or privileges of employment." The terms "hire," "employ," and "employment" are not specifically defined in the statute. In the absence of such specificity, the common understanding of those terms appropriately should be applied when construing provisions of the statute affected by those terms. See, e.g., *Fruco Construction Co.* v. *McClelland,* 192 F.2d 241, 244–45 (8th Cir.) (construing undefined term "employer" in the federal Fair Labor Standards Act according to common usage). The terms "hire," "employ," and "employment" all generally refer to a relationship, involving compensation, between a person who has the authority to hire and fire and a person who performs the services. *State* v. *Kenyon, Inc.,* 153 S.W.2d 195, 197 (Tex. Civ. App.) ("hire"); *Tennessee Coal, Iron & R. Co.* v. *Muscoda Local No. 123,* 321 U.S. 590, 597–98, 64 S. Ct. 698, 88 L. Ed. 949; *Slocum Straw Works* v. *Industrial Commission,* 232 Wis. 71, 76, 286 N.W. 593 ("employ"); *State* v. *Foster,* 37 Iowa 404; *State* v. *Deck,* 108 Mo. App. 292, 293–94, 83 S.W. 314 ("employment"); *McCluskey* v. *Cromwell,* 11 N.Y. 593; see also

Black, Law Dictionary (Rev. 4th Ed.) 863 ("hire"), 617 ("employ"), 618 ("employment"). In this case, however, the complaint against Pioneer alleged not the refusal of any employment within the meaning of § 31-126 (a) but the denial of an "application" for "membership" in what is a "voluntary association." See, in this connection, *Going* v. *Cromwell Fire District,* 159 Conn. 53, 60, 267 A.2d 428, where we referred to the relationship between "employer" and "employee," created by statute for volunteer firemen for purposes of applicability of this state's workmen's compensation laws, to be a "fictitious" relationship. The complainant, in this sense, then, failed to meet its burden of alleging facts sufficient to bring this proceeding within the requirements of § 31-126 (a). See *Senior* v. *Hope,* 156 Conn. 92, 98, 239 A.2d 486.

For the foregoing reasons, I concur in the result.

BOGDANSKI, J. (concurring and dissenting). I cannot agree that the death of Richardson deprived the commission of jurisdiction to hear the complaint. The majority opinion concludes that "[s]ince the commission failed to amend the complaint to substitute itself as complainant seeking relief in the interest of the general public, it was error for the tribunal to deny the plaintiffs' timely motions to dismiss." That statement, however, erroneously assumes that Richardson was a necessary party to the commission proceedings. Pursuant to §§ 31-127 and 53-36 of the General Statutes, any person claiming to be aggrieved by an alleged unfair employment practice as defined in § 31-126 of the General Statutes or claiming to be deprived of constitutional rights as defined in § 53-34 of the General Statutes may file a written complaint,

under oath, with the commission. Such person, having filed a complaint, then becomes no more than an interested party and potential witness in subsequent proceedings. It is the commission which is required to investigate the complaint and to "endeavor to eliminate the unfair employment practice [or deprivation of constitutional rights] complained of by conference, conciliation and persuasion." General Statutes § 31-127. Failing that, the matter proceeds to a hearing before a hearing tribunal. Under § 31-127, the only party required to be served and to appear is "the person . . . [or] employer . . . named in such complaint, . . . referred to as the respondent . . . . *The case in support of the complaint shall be presented at the hearing by the attorney general, who shall be counsel for the commission . . . .*" (Emphasis added.)

The original complainant then is not a necessary party under the procedure set forth in § 31-127. The proceeding is one in which the commission on human rights and opportunities prosecutes the complaint before a hearing tribunal appointed by the chairman of the commission, which procedure is similar to that established for numerous other "watchdog" administrative agencies.[1] Moreover, only the commission may petition the court for the enforcement of any cease and desist order issued by the tribunal. General Statutes § 31-128 (a). It

---

[1] See, e.g., General Statutes (Rev. to 1975) §§ 14-4a, 14-64, 14-67c, 14-110 to 14-111b, and 14-114 of the General Statutes, regarding the motor vehicles commissioner; §§ 15-124, 19-513a, 19-514 and 22a-5, regarding the commissioner of environmental protection; §§ 16-8, 16-9, 16-12 and 16-13, regarding the public utilities commission; §§ 20-45 and 20-46, regarding the medical examining boards; §§ 20-320 and 20-321, regarding the real estate commission; § 30-8, regarding the liquor control commission; and § 38-62, regarding the insurance commissioner.

is true that either the respondent or the original complainant may now appeal from the action of the hearing tribunal. General Statutes § 31-128 (d). That right of appeal, however, was not originally extended to the complainant; see Sup. 1947 § 1366i; and it was not until 1963 that the complainant was given the right to appeal. 1963 Public Acts No. 472. Nevertheless, the complainant's right of appeal is not inconsistent with the framework of § 31-127 which designates the commission and the respondent as the only necessary parties for purposes of the hearing before the tribunal, and which, by implication, relegates the complainant to the status of an interested party.

The reliance by the majority on *Veeder-Root Co.* v. *Commission on Human Rights & Opportunities,* 165 Conn. 318, 334 A.2d 443, is misplaced. The issue there was whether the relief granted was within the wording of the complaint, i.e., whether the respondent had *notice* of the scope of the action. Id., 329. That case had nothing to do with the question of standing, although it did indicate by way of dicta that the commission could have amended the complaint of Hilda Moe to include an attack on department-wide discrimination. Id., 328. If the commission can amend the original complainant's complaint, it then follows that the commission is the real adversary to the respondent in the hearing before the tribunal. At any rate, the commission did amend the complaint in the present case. As noted in the concurring opinion, the amended complaint alleged that Pioneer was using a "membership" procedure which was a "vehicle of discrimination" and "an improper standard to be used in the conduct of a public agency." I agree with the concurring opinion that the amended complaint

enlarged the issues to be decided before the tribunal far beyond the question of discrimination against Richardson alone, and that Richardson's death did not ipso facto deprive the tribunal of jurisdiction to proceed with the hearing.

I also agree with the concurring opinion that the commission failed to allege an unfair employment practice within the meaning of § 31-126 (a) of the General Statutes. Nowhere in the amended complaint is it alleged that either Groton is an employer or that an application for "membership" in Pioneer is, in effect, an application for employment with Groton. Since that failure to allege facts sufficient to bring the proceeding within the requirements of § 31-126 (a) was raised by the plaintiffs in their motions to dismiss filed with the tribunal, the defect was not waived and the tribunal should have dismissed that portion of the complaint that alleged a violation of § 31-126 (a).

The tribunal, however, properly proceeded with respect to the broader allegations of the complaint which claimed that the "membership" procedure used by Pioneer, an agent of Groton, was "a vehicle of discrimination" in violation of § 53-34 of the General Statutes. Under § 53-34, it is unlawful for any person to subject any other person to the deprivation of constitutional rights on account of alienage, color, race or sex. Section 53-36 provides that any person aggrieved by a violation of § 53-34 may file a complaint with the commission which then proceeds on such a complaint "in the same manner and with the same powers as provided in . . . the case of unfair employment practices." Thus, the commission is the moving party in pressing the complaint to final disposition, and the survival-of-actions statute, § 52-599 of the General

Statutes, does not apply upon the death of the original complainant, when the complaint has been amended to allege discriminatory practices that affect the public generally. The trial court properly noted that "[a]lthough the complainant's right to personal relief did not survive, the public's interest and right to relief would not be extinguished by the death of a complainant under a valid proceeding." Under § 53-34, a criminal prosecution would not abate upon the death of a complaining witness, since a violation of that statute is a wrong against the people of this state. The scope of the harm to be prevented is not lessened merely because the commission becomes the public agency designated to remedy the situation by means of conciliation, persuasion and administrative hearing. That only a person who is aggrieved by a violation of § 53-34 may file a complaint with the commission should not be construed to mean that the commission may only seek relief for that individual. The harm, a deprivation of constitutional rights, is one which society has a stake in preventing and the relief sought by the commission is for the benefit of the public, not merely for the individual who files the complaint.

I would therefore conclude that Richardson's death did not prevent the commission from going forward with the claim that the plaintiffs were violating § 53-34 of the General Statutes by maintaining "membership" requirements that set forth "a vehicle of discrimination."

The issues actually raised on this appeal and briefed by the parties should be reached. As noted in the majority opinion, the trial court determined that the hearing tribunal was without jurisdiction to issue the cease and desist order against the plaintiffs. The court concluded that the complaint and

amended complaint had not been filed with the commission within ninety days after the alleged act of discrimination as required by § 31-127 of the General Statutes, and that the complaint and amended complaint were defective in failing to make reference to the subsection of § 31-126 of the General Statutes as required by the regulations of the commission. The commission has assigned error in both of those conclusions.

It appears from the finding of the commission that Richardson applied for membership in Pioneer on October 11, 1967; that the application contained no inquiry about the applicant's experience as a firefighter; that the application required the signature of a sponsor; that only a present member of Pioneer could act as a sponsor; that Richardson submitted the application without a sponsor's signature; and that the application was accepted by the foreman of Pioneer. It was not until October 17, 1967, that Richardson was sent notice that his application was invalid because it lacked a sponsor's signature. Whether Richardson's complaint was filed with the commission on January 9, 1968, or on the following day, is of no consequence. The ninety-day filing limitation in § 31-127 of the General Statutes could not possibly start to run until actual notice of the rejection of the application was sent to Richardson. Otherwise, a respondent could wait out the ninety-day filing period, then notify the applicant of its decision, and claim that any complaint filed with the commission thereafter was not timely under § 31-127. Common sense as well as the case law dictate that no such loophole can exist in the procedure provided by the legislature for filing complaints with the commission. See *International Brotherhood of Electrical Workers Local 35* v.

*Commission on Civil Rights,* 140 Conn. 537, 102 A.2d 366. Thus, Richardson's complaint against Pioneer was filed with the commission within ninety days of the alleged act of discrimination, which occurred on October 17, 1967, the date notice was sent to Richardson. The trial court erred in concluding that the act of discrimination occurred on October 11, 1967, and in calculating the ninety-day filing period from that date. It may well be that the subsequent amendment of the complaint on April 24, 1968, which added Groton as a party, was the commencement of a new proceeding against Groton which was beyond the ninety-day period of limitation. See, generally, 51 Am. Jur. 2d, Limitation of Actions, § 272. That defect, however, did not require dismissal of the proceeding against Pioneer.

The second ground on which the trial court based its decision to sustain the appeals was the failure of the complaint and the amended complaint to make reference to the subsection of § 31-126 of the General Statutes which the plaintiffs allegedly were violating. The commission argues that that omission did not render the complaint fatally defective for several reasons, not the least of which is the fact that the complaint also alleged that the plaintiffs had violated § 53-34 of the General Statutes. Any defect regarding the charge under § 31-126 could not affect the separate charge under § 53-34. The hearing tribunal concluded that Pioneer had violated § 53-34. The trial court therefore should have proceeded to hear the merits of the appeal with regard to that allegation.

I would find error in the sustaining of the Pioneer appeal, vacate the judgment and remand the case for consideration of the substantive issues raised in that appeal.