VEEDER-ROOT COMPANY, A DIVISION OF VEEDER INDUSTRIES, INC. *v.* COMMISSION ON HUMAN RIGHTS AND OPPORTUNITIES

HOUSE, C. J., SHAPIRO, LOISELLE, MACDONALD and BOGDANSKI, Js.

Argued May 3—decided July 18, 1973

*Bernard F. McGovern, Jr.,* assistant attorney general, with whom were *Philip A. Murphy, Jr.,* and, on the brief, *Robert K. Killian,* attorney general, and *F. Michael Ahern,* assistant attorney general, for the appellant (defendant).

*James A. Wade,* for the appellee (plaintiff).

MacDonald, J. This is an appeal from a judgment rendered by Hon. Howard W. Alcorn, a state referee, exercising the powers of the Superior Court, which judgment modified an order of a hearing tribunal designated by the Connecticut commission on human rights and opportunities, hereinafter called the commission. The relevant procedural background is set out in detail in the memorandum of decision filed by the referee acting as a court, and may be briefly summarized.

On February 26, 1969, Hilda G. Moe filed with the commission a complaint against her employer, the plaintiff, the Veeder-Root Company, pursuant to the provisions of § 31-127 of the General Statutes, as amended. Because of the importance of its procedural details and the difficulty of deleting any substantial portions thereof as irrelevant, the entire

statute as it appears in the 1969 Supplement to the General Statutes is set forth in the footnote.[1]  For

[1] "[General Statutes] Sec. 31-127. PROCEDURE. Any person claiming to be aggrieved by an alleged unfair employment practice may, by himself or his attorney, make, sign and file with the commission a complaint in writing under oath, which shall state the name and address of the person, employer, labor organization or employment agency alleged to have committed the unfair employment practice, and which shall set forth the particulars thereof and contain such other information as may be required by the commission.  The commission, whenever it has reason to believe that any person has been engaged or is engaged in an unfair employment practice, may issue a complaint.  Any employer whose employees, or any of them, refuse or threaten to refuse to comply with the provisions of this chapter may file with the commission a written complaint under oath asking for assistance by conciliation or other remedial action.  After the filing of any complaint, the chairman of the commission shall refer the same to a commissioner or investigator to make prompt preliminary investigation of such complaint and, if such commissioner or investigator determines after such preliminary investigation that there is reasonable cause for believing that an unfair employment practice has been or is being committed as alleged in such complaint he shall immediately endeavor to eliminate the unfair employment practice complained of by conference, conciliation and persuasion.  In the conduct of such investigation the commission may issue subpoenas requiring the production of employment records relating to the complaint under investigation.  No commissioner or investigator shall disclose what has occurred in the course of such endeavors, provided the commission may publish the facts in the case and any complaint which has been dismissed and the terms of conciliation when a complaint has been adjusted.  In case of failure to eliminate such practice, the investigator or investigating commissioner shall certify the complaint and the results of his investigation to the chairman of the commission and to the attorney general.  The chairman of the commission shall thereupon appoint a hearing tribunal of three members of the commission or a panel of hearing examiners to hear such complaint and shall cause to be issued and served in the name of the commission a written notice, together with a copy of such complaint, as the same may have been amended, requiring the person, employer, labor organization or employment agency named in such complaint, hereinafter referred to as the respondent, to answer the charges of such complaint at a hearing before such tribunal, at a time and place to be specified in such notice.  The place of any such hearing may be the office of the commission or another place desig-

similar reasons, the complaint itself is set forth in full below[2] and, as may be observed, concludes with

nated by it. The case in support of the complaint shall be presented at the hearing by the attorney general, who shall be counsel for the commission, or the counsel appointed under the provisions of section 31-125a, as the case may be; and no commissioner who previously made the investigation or caused the notice to be issued shall participate in the hearing except as a witness, nor shall he participate in the deliberations of the tribunal in such case. Any endeavors or negotiations for conciliation shall not be received in evidence. The respondent may file a written answer to the complaint and appear at such hearing in person or otherwise, with or without counsel, and submit testimony and be fully heard. The tribunal conducting any hearing may permit reasonable amendment to any complaint or answer and the testimony taken at such hearing shall be under oath and be transcribed at the request of any party. If, upon all the evidence, the tribunal finds that a respondent has engaged in any unfair employment practice, it shall state its findings of fact and shall issue and file with the commission and cause to be served on such respondent an order requiring such respondent to cease and desist from such unfair employment practice and further requiring such respondent to take such affirmative action, including, but not limited to, hiring or reinstatement of employees, with or without back pay, or restoration to membership in any respondent labor organization, as in the judgment of the tribunal will effectuate the purpose of this chapter. If, upon all the evidence, the tribunal finds that the respondent has not engaged in any alleged unfair employment practice, it shall state its findings of fact and shall similarly issue and file an order dismissing the complaint. The commission shall establish rules of practice to govern, expedite and effectuate the foregoing procedure. Any complaint filed pursuant to this section must be so filed within ninety days after the alleged act of discrimination."

[2]                    "STATE OF CONNECTICUT

Commission on Human Rights and Opportunities

| HILDA G. MOE | |
|---|---|
| Complainant | Complaint No. F.E.P.-Sex 4-1 |
| vs. | |
| VEEDER-ROOT, INC. | Feb. 26, 1969 |
| Respondent | |

*Complaint Against Unfair Employment Practice*

To the Commission on Human Rights and Opportunities: I Hilda G. Moe, residing at 56 Water St., So. Glastonbury, complain and

the assertion by Mrs. Moe that "I feel I am being discriminated against because of my sex (female)."

On December 19, 1969, following an investigator's report that there was a reasonable ground for complaint in accordance with the investigatory procedure prescribed by § 31-127, the defendant notified the plaintiff to appear for a hearing on the complaint on January 20, 1970. On December 30, 1969, the plaintiff filed an answer denying "any violation of Section 31-126, subsection (a), of Chapter 563 of the General Statutes of Connecticut as amended with respect to Complainant Hilda G. Moe." At intervals between January 20, 1970, and December 1, 1970, also in accordance with the procedural requirements of § 31-127, hearings were held before a hearing tri-

say that Veeder-Root, Inc., residing at 28 Sargeant St., Hartford, is violating subsection (a) of Section 31-126 of Chapter 563 of the General Statutes of Connecticut, as amended.

On or about January 22, 1969 I spoke with Charles Smith, the general manager of my department, to ask him why women assemblers in my department were doing the same jobs as the men assemblers—yet, the women were only receiving $2.21/hr. while the men received $2.69/hr. Mr. Smith stated that there were a lot of things that men were supposed to do that women weren't doing. The things he then mentioned I have not seen men doing. I asked to see the men's job classification which he refused to show me.

After July 7, 1965 when the Civil Rights Law of 1964 went into effect I had also asked my supervisor when women would start getting the same pay as men. After consulting a superior, my supervisor stated, "This company isn't ready to pay women the same as men!"

I have worked for this company for twenty years. I have been working in Dept. 99 for nine years now. I do not feel the men are doing any different work than the women are. On the basis of these two incidents and my past experience in this company, I feel I am being discriminated against because of my sex (female).

Dated at Hartford this 26 day of February, 1969.

Hilda G. Moe

Subscribed and sworn to before me this 26 day of February, 1969. Attest: A True Certified Copy

Judith V. Beirs"

bunal of three members appointed by the chairman of the commission. On May 18, 1971, the hearing tribunal filed its decision and order which directed the plaintiff (1) to cease and desist from maintaining the discriminatory job and classification system in effect in its department 99, to remove all of the consequences of its discriminatory acts including but not limited to abolishing any distinction between the classification of assembler A and assembler B, or any successor classification, and to abolish the job description system, the color coding system or any other system that classifies assemblers on the basis of sex in department 99; (2) to cease and desist from discriminatorily applying any discriminatory job and classification to the complainant Hilda Moe; (3) to cease and desist from paying Hilda Moe as an A assembler less than the B assembler rate as long as the work is substantially the same and notwithstanding any new job classification under a new collective bargaining contract; and (4) to pay Hilda Moe the difference between the A assembler and the B assembler pay rate from October 1, 1967, to and including the date of payment.

On May 28, 1971, the plaintiff appealed to the Superior Court from the hearing tribunal's order challenging, inter alia, the scope of the tribunal's order, and on July 29, 1971, the defendant filed an answer and a counterclaim requesting an order of the Superior Court to enforce the order of the tribunal. On August 31, 1971, the defendant certified the record of the hearings to the court, and on October 5, 1971, the issues on the appeal were closed by the filing of the plaintiff's reply to the defendant's counterclaim. The reply, in essence, again challenged the scope of the tribunal's order.

By stipulation of the parties the matter was referred to the Hon. Howard W. Alcorn, a state referee, and, as required by § 31-128, the issues were heard by him acting as a court on the record certified by the defendant. Various issues were presented to and decided by the referee acting as a court, only a few of which have been assigned as error to this court. On April 17, 1972, the court filed a lengthy memorandum of decision and judgment was rendered modifying the order of the tribunal to read as follows: "Veeder-Root Company, a division of Veeder Industries, Inc. is ordered: (1) to cease and desist from discriminating against Hilda Moe in compensation because of her sex; (2) to pay Hilda Moe a sum which, in toto, shall be the difference between the hourly wage which she has received as an Assembler A or equivalent classification in Department 99 and the hourly wage allotted to employees classified as Assembler B or equivalent classification in Department 99 from January 22, 1969 to the date of payment; (3) thereafter, and so long as Hilda Moe performs the duties which she was performing on January 22, 1969, to classify and pay her as an Assembler B or equivalent classification in Department 99." Thereafter, the commission appealed to this court from the judgment rendered in accordance with the order of modification.

In this appeal the commission claims that the state referee erred (1) in setting aside in its entirety paragraph 1 of the order of the hearing tribunal, or alternatively, in failing to modify the order to cure any formal defects or to remand the matter to the hearing tribunal for this purpose; (2) in limiting paragraph 4 of the order to payment to the complainant Hilda Moe of the higher wage rate from

January 22, 1969, to the date of payment instead of from October 1, 1967, the effective date of the inclusion of sex discrimination in § 31-126 of the General Statutes, as amended, to the date of payment; and (3) in denying in part the relief sought by the defendant in its counterclaim.

We deal first with the claim that the court erred in setting aside paragraph 1 of the order of the tribunal, but for a proper understanding of this issue at the outset we set out the undisputed facts regarding Hilda Moe's employment as presented by the court from the record:

"The Veeder-Root Company, an operating division of Veeder Industries, Inc. manufactures at its Hartford factory some 4000 types of counters. In 1959 it reactivated what is known as Department 99 to provide sample orders of particular counters with service on them to customers and service to other departments of the factory. More recently the work has been expanded to the manufacture of assembly orders for nonproduction counters and parts. There are three job classifications in the department in ascending order, namely Assembler A, B, and A prime. The present case is concerned only with classifications A and B. The job description of Assembler A requires a good knowledge of counter mechanisms, the complete assembly of a specific line or type of counters from parts and assemblies, the operator must obtain a blueprint to check component part numbers and specifications, and he must use a variety of hand tools such as mallets, hammers, punches, picks, tweezers, pliers, etc. The job description for Assembler B requires a general knowledge of counters, the complete assembly of a variety of standard counters, the operator

must be able to read blueprints as a whole, he must use a wide variety of hand tools including hand reamers, hand facing tools and files in addition to those used by Assembler A and must operate a drill press, bench grinder, riveting or stamping machine and foot press, and he must be able to select and try parts, fit, adjust and align to proper function, reset, and figure alignment and function.

"Fourteen women are employed in the Assembler A classification. Seven men are employed in the Assembler B classification. Assemblers A and B work side by side and occasionally assist one another. Assemblers B generally assemble various types of counters while Hilda Moe works on a single type. In November 1969 Assembler A pay was raised from $2.215 to $2.565 per hour and Assembler B pay was raised from $2.699 to $2.899 per hour. The larger pay rates have remained constant since.

"Hilda Moe has been employed by the plaintiff continuously since January 4, 1949. Since October 30, 1959 she has been an Assembler A in Department 99. Hilda Moe's job is to assemble what is known as a visi-counter using the tools described in the Assembler A job classification.

"Prior to the hearing in this case no female had ever been classified as an Assembler B and no male had ever been classified as an Assembler A. Since Department 99 was reconstituted in 1959 the Assembler A and B jobs have been designated as female and male jobs respectively. Hilda Moe and other females classified as Assembler A have exhibited the capability to do work commonly assigned to and done by males classified as Assembler B. Males have been transferred from other jobs in the factory

to Assembler B jobs in Department 99 when females with greater seniority and/or assembly experience were not advised of, or advanced to, the opening."

It was the conclusion of the hearing tribunal, based essentially on the facts recited above, that there was no substantial difference between the two job classifications, that the pay differential between them was based on sex and that, as a consequence, there was a violation of § 31-126 (a). This conclusion is not disputed. What is the subject of dispute, however, is the form of the order. In ordering the plaintiff to "cease and desist from maintaining the discriminatory job and classification system in effect at Veeder Root in Department 99 and remove all of the consequences of its discriminatory acts including but not limited to abolishing any distinction between the classification of assembler A and assembler B, or any successor classification system, abolishing the job description system, the color coding system or any other system that classifies assemblers on the basis of sex in Department 99," the commission clearly intended to act with respect to sex discrimination as including other female employees rather than sex discrimination directed solely at Hilda Moe. The plaintiff claims that the order went beyond the scope of the pleadings, and in this we must agree. As stated by the referee, "the clear import of the complaint was that . . . [Hilda Moe], as one of the women in the department, was, without any bona fide occupational qualification or need, being discriminated against in compensation because of her sex. . . . The complaint could not properly be construed as an attempt to represent, or speak for, the other women in the department as a class."

Furthermore, in its answer the plaintiff denied "any violation of Section 31-126, subsection (a), of Chapter 563 of the General Statutes of Connecticut as amended *with respect to Complainant Hilda G. Moe* [emphasis added]." The issue was thus framed by the pleadings—was there any sex discrimination in department 99 in the plaintiff's plant directed against Hilda Moe? As the hearing progressed and it became apparent that sex discrimination existed in department 99 on a department-wide basis, the statute, § 31-127, provided the means whereby the commission could have either amended the complaint to include an attack on the department-wide discrimination or issued a new complaint in the name of the commission containing such an allegation. Had the commission taken either of these actions there would have been no question of the issues that were being litigated as involving department-wide discrimination and of the scope of the order that the commission might issue. Instead, no amendment or new complaint was issued with the result that the commission and the plaintiff are now at odds about what issues were actually litigated and about the legality of the commission's order. While it is true that evidence was introduced before the hearing tribunal regarding department-wide discrimination, it is also true that this evidence was relevant to the issue of whether Hilda Moe had been placed in the assembler A class solely because of her sex, or whether her placement was a result of some other form of selective process not prohibited by the Fair Employment Practices Act. The introduction of this evidence is obviously not decisive on the question of whether the plaintiff had actual notice that the commission was attacking department-wide discrimination.

Section 31-127 clearly provides that the respondent appear before the hearing tribunal in order "to answer the charges of . . . [the] complaint." This means that the charges in the complaint frame the issues to be decided by the hearing tribunal. Since the individual complaint of Hilda Moe, fairly read, did not provide the respondent, the plaintiff, with notice of the scope of the action and since the commission, under § 31-127 of the General Statutes, was empowered to issue a new complaint attacking department-wide sex discrimination which would have apprised the plaintiff of the scope of the action, we conclude that the plaintiff was justified in its belief that the commission's attack was directed solely at sex discrimination as applied only to Hilda Moe. It was, therefore, improper for the commission to issue an order requiring the plaintiff to cease and desist from department-wide discrimination.

The commission also argues that the court's action in negating paragraph 1 of the order runs afoul of title VII of the Civil Rights Act of 1964, 78 Stat. 253, as amended, 42 U.S.C. §§ 2000e to 2000e-17, a federal law which inter alia prohibits employment discrimination on the basis of sex. The commission claims that Congress in promulgating title VII did not intend to preempt state action in the field. While this may be true, it does not mean that states are obligated to apply federal procedural law to a complaint brought pursuant to a state statute prohibiting sex discrimination in employment. The fact that under federal law individual complaints of employees are liberally construed so that class actions are established more easily; see *Bowe* v. *Colgate-Palmolive Co.*, 416 F.2d 711, 715 (7th Cir.); is of little significance in determining whether the commission deviated from § 31-127 when it issued a blan-

ket order against sex discrimination in department 99 merely on the basis of an individual complaint of a single employee of the department.

In holding that the commission failed to comply with § 31-127 in that its order went beyond the scope of the complaint, we do not share the commission's fear that "if the decision of the Superior Court is allowed to stand, the Connecticut Fair Employment Practices Law will become ineffective" and the "deferral of complaints of discrimination [by the federal Equal Employment Opportunity Commission] may cease." In future cases, when it finds more extensive discrimination than that fairly charged in the complaint, the commission need only issue another complaint, as the same may have been amended, containing allegations sufficient to apprise the respondent of the enlarged scope of the action.

The next claim of error is that the court erred in setting aside, in part, paragraph 4 of the order of the hearing tribunal to the extent of allowing payment to Hilda G. Moe of a sum of money representing the wage difference between assembler A and assembler B from January 22, 1969, to the day of payment, instead of from October 1, 1967, to the date of payment, as ordered by the hearing tribunal. Section 31-127 of the General Statutes provides that any complaint filed pursuant to § 31-127 "must be so filed within ninety days after the alleged act of discrimination." Since this is the only time limitation contained in chapter 563, the trial court was correct in concluding that that limitation governed rather than the general two-year statutory limitation in General Statutes § 52-596, stating that "[t]he clear import of § 31-127 is to furnish redress for an 'act of discrimination' which has been complained of

within ninety days of the date on which it is alleged to have occurred," and in its determination that the award of supplemental pay to Hilda Moe should be computed from that day. Were this not the case we think that some employees would be tempted to bring actions under chapter 563, with no expense to themselves because the attorney general and the commission would act as their attorneys, in the hope that they might force settlements involving substantial amounts of supplemental pay. By limiting the time of redress to the act of discrimination which occurred within ninety days of the complaint, the incentive for bringing such spurious actions is substantially reduced, and we think this was the intent of the legislature in establishing the ninety-day limit.

The view we take of the legislature's intent in specifying the ninety-day limit to actions under § 31-127 is fully supported by the legislative history of the statute. Comparisons between time limits found in this section and other statutory remedies are of little value in determining the legislative intent underlying § 31-127. We must look instead to the clear statements of purpose expressed during consideration of this limitation by the legislature.

Section 31-127 in its original form did not grant to the commission powers to make orders compelling employers to pay back pay to employees against whom unfair labor practices had been used. The 1959 legislature considered a public act, No. 334, to enlarge the powers of the commission and during floor debate in the House of Representatives one representative questioned the wisdom of retaining the six-month limitation which existed at that time in light of the commission's new powers. In an

attempt to resolve the problem he submitted a floor
amendment deleting the six-month limitation and
substituting the present ninety-day limitation. This
amendment was accepted by one of the sponsors of
the bill who said: "I will accept it in the spirit in
which it's been offered." A further explanatory
comment was offered by the minority leader who
said: "The time [limit] was not important really in
the bill as it was originally cast prior to the pro-
posed change in it. . . . Now, under the proposed
change . . . it [the commission] can reinstate and
require the payment of back pay. If the period for
filing the complaint is allowed to be too long, a sub-
stantial amount of back pay can build up, and it
seems intelligent to narrow that period for filing
down as much as possible. That's the reason for the
amendment. . . . I think it's a sensible change in
the bill." 8 H.R. Proc., Pt. 7, 1959 Sess., p. 2596.
The amendment was thereafter passed in the House
of Representatives and adopted by the Senate.
There can be no doubt that the legislature intended
the ninety-day limitation to serve as a bar to re-
covery of back pay beyond ninety days prior to the
complaint. In the present case the complaint filed on
February 26, 1969, by Hilda Moe alleged that dis-
criminatory practices were being employed against
her and clearly addressed itself to a course of con-
duct by the defendant extending back over a period
of time considerably longer than ninety days prior
to the filing of the complaint. Under the statutory
limitation, however, recovery of back pay could be
allowed only for the period of ninety days preced-
ing the complaint. Accordingly, this court must con-
clude that Hilda Moe was entitled to back pay for

the ninety days preceding February 26, 1969, rather than only from January 22, 1969, as ordered by the court.

The final assignment of error has been adequately covered by the foregoing discussion.

There is error with respect to the period of time for which Mrs. Moe is entitled to receive supplemental pay, and the case is remanded with direction to modify the judgment in that respect in accordance with this opinion.

In this opinion HOUSE, C. J., SHAPIRO and LOISELLE, Js., concurred.

BOGDANSKI, J. (dissenting). I agree that there was error with respect to the back pay order, but I cannot agree with the majority that the complaint of the commission did not give the Veeder-Root Company, hereinafter called the plaintiff, actual notice that the commission was attacking department-wide discrimination.

The commission began this proceeding by transmitting Hilda Moe's complaint, as more fully set forth in footnote 2 of the majority opinion, to the plaintiff. In her complaint, Hilda Moe specifically alleged department-wide discrimination by stating: (1) that on January 22, 1969, she asked the general manager of her department "why woman assemblers in my department were doing the same jobs as the men assemblers" yet were receiving less pay; (2) that the general manager "stated that there were a lot of things that men were supposed to do that women weren't doing" but that "the things he then mentioned I [Hilda Moe] have not seen men doing"; (3) that the general manager refused to show her

the men's job classification after she had requested
to see it; (4) that the men in her department were
not doing "any different work than the women"
were; (5) that in 1965 she had asked her supervisor
when women would start getting the same pay as
men, and that her supervisor replied, after consulta-
tion with a superior, that "[t]his company isn't
ready to pay women the same as men."

The majority states that the complaint, fairly
read, "was directed solely at sex discrimination as
applied only to Hilda Moe," because her complaint
concluded with this statement: "On the basis of
these two incidents and my past experience in this
company, I feel I am being discriminated against
because of my sex (female)."

Considering the complaint as a whole, the majority
places undue emphasis on Mrs. Moe's statement of
personal aggrievement. This statement satisfies
merely the requirement of § 31-127 that only those
persons "claiming to be aggrieved by an alleged
unfair employment practice" may file a complaint
with the commission. The rest of the complaint
unequivocally alleges department-wide sex discrimi-
nation. As the hearing tribunal concluded, "by the
filing of such complaint the Respondent was placed
on notice of discrimination on the basis of sex, both
as a result of the differential in pay, and with re-
gard to the job classification system and as a result
of her past experience in this Company. . . . [T]he
scope of the charges include [sic] not only the differ-
ential in pay, but also attack [sic] the discriminatory
system in effect at Veeder Root, and as such system
was applied to Hilda Moe."

Nine days of hearing were held in this case, re-
sulting in a transcript of over 700 pages. From the

record, it is apparent that the hearing was geared to the issue of whether the plaintiff had maintained a department-wide classification system which discriminated on the basis of sex. This fact was understood by counsel for the plaintiff, who said in his opening statement: "What the Commission has to prove here to prevail is really a very narrow issue. They have to prove that the job of Assembler, Grade A, the lower rated job, has substantially the same amount of skill, effort and responsibility involved as the higher labor grade. . . . We intend to demonstrate . . . that the jobs are far from the same as far as skill, effort and responsibility are concerned."

Thus, much evidence was introduced pertaining to department-wide discrimination. Five women, assemblers A, testified to the substantial similarity of their jobs to the jobs of male assemblers B. Documentary evidence to the same effect was also received. The plaintiff produced evidence to show that the job classification system was bona fide. Moreover, the members of the hearing tribunal personally inspected department 99 in order to observe all the employees at work.

The plaintiff has not claimed that any of this evidence was irrelevant to the issues as limited by the complaint, nor has it ever made any objection to this evidence as being beyond the scope of the complaint. Moreover, at no time did the plaintiff request further specificity with respect to the charges. Rather, the plaintiff itself introduced evidence regarding its classification system in its defense.

Given the allegations of the complaint and the broad statutory powers vested in the commission by § 31-127 to proceed against any and all unfair labor

practices, the failure of the plaintiff to seek to clarify the scope of the proceeding strongly suggests that it was aware that its job classification system was under attack. Indeed, neither in its brief to this court nor in its appeal to the Superior Court has the plaintiff ever claimed that it did not have adequate notice. It has argued only that notice should have been given to persons other than itself. This omission reinforces the conclusion that the plaintiff was on notice from the date of the complaint that its practice of department-wide sex discrimination was being challenged.

I believe that the conclusions of the majority run counter to the express provisions of the statute as well as the record. The commission on human rights and opportunities is the creature of the Connecticut Fair Employment Practice Act, §§ 31-122—31-128 of the General Statutes. A reading of the express and unambiguous language of the act demonstrates that the commission acted properly in challenging department-wide sex discrimination. Section 31-127[1] provides that on receiving the complaint

---

[1] "[General Statutes] Sec. 31-127. PROCEDURE. Any person claiming to be aggrieved by an alleged unfair employment practice may . . . file with the commission a complaint in writing under oath, which shall . . . set forth the particulars thereof . . . . After the filing of any complaint, the chairman of the commission shall refer the same to a commissioner or investigator to make prompt preliminary investigation of such complaint and, if such commissioner or investigator determines after such preliminary investigation that there is reasonable cause for believing that an unfair employment practice has been or is being committed as alleged in such complaint he shall immediately endeavor to eliminate the unfair employment practice . . . by conference, conciliation and persuasion. . . . In case of failure to eliminate such practice, the investigator . . . shall certify the complaint and the results of his investigation to the chairman of the commission and to the attorney general. The chairman of the commission shall thereupon appoint a hearing tribunal of three members of the commission . . . to hear such complaint and shall

of any person claiming to be aggrieved by an alleged unfair employment practice the commission may issue a complaint against that practice. The statute commands the commission to grant whatever relief is necessary to seek out and eliminate the discriminatory practices alleged. Mrs. Moe, however deserving of relief she personally may have been, was merely incidental to the main thrust of the action of the commission in this case. The commission is primarily authorized to seek the elimination of public wrongs, not the vindication of private rights. Indeed, Mrs. Moe was not even a party to this action. In fact, a different statute governs private actions for back pay in cases of sex discrimination. See General Statutes § 31-76. Pre-

cause to be issued and served in the name of the commission a written notice, together with a copy of such complaint, . . . requiring the . . . employer . . . named in such complaint . . . to answer the charges of such complaint at a hearing before such tribunal . . . . The case in support of the complaint shall be presented at the hearing by the attorney general, who shall be counsel for the commission . . . . The respondent may file a written answer to the complaint and appear at such hearing in person or otherwise, with or without counsel, and submit testimony and be fully heard. . . . If, upon all the evidence, the tribunal finds that a respondent has engaged in any unfair employment practice, it shall state its findings of fact and shall issue and file with the commission and cause to be served on such respondent an order requiring such respondent to cease and desist from such unfair employment practice and further requiring such respondent to take such affirmative action, including, but not limited to, hiring or reinstatement of employees, with or without back pay, or restoration to membership in any respondent labor organization, as in the judgment of the tribunal will effectuate the purpose of this chapter. If, upon all the evidence, the tribunal finds that the respondent has not engaged in any alleged unfair employment practice, it shall state its findings of fact and shall similarly issue and file an order dismissing the complaint. The commission shall establish rules of practice to govern, expedite and effectuate the foregoing procedure. Any complaint filed pursuant to this section must be so filed within ninety days after the alleged act of discrimination."

sented with allegations of department-wide discrimination, the commission would have ignored its statutory responsibility had it merely sought to redress the individual grievance of Mrs. Moe.

For these reasons I dissent.