TOWN OF WEST HARTFORD *v.* COMMISSION ON HUMAN RIGHTS AND OPPORTUNITIES

COTTER, C. J., BOGDANSKI, LONGO, SPEZIALE and PETERS, Js.

Argued October 11—decision released December 5, 1978

*Richard J. Lynch,* assistant attorney general, with whom, on the brief, were *Carl R. Ajello,* attorney general, and *Bernard F. McGovern,* assistant attorney general, for the appellant (defendant).

*William L. Wilkinson,* assistant corporation counsel, with whom was *Steven R. Humphrey,* corporation counsel, for the appellee (plaintiff).

PETERS, J. The defendant commission on human rights and opportunities has appealed from a judgment of the trial court reversing the decision of a hearing tribunal appointed by the commission under § 31-127 of the General Statutes. The tribunal had held that the plaintiff town of West Hartford had unlawfully discriminated on the basis of sex in respect to the wages and benefits of certain women hired as communications center operators by the town in 1971 and thereafter.

Until 1971, West Hartford had employed uniformed fire dispatchers and police dispatchers to

staff separate communications centers for each service. They were paid on the same pay scale as were fire fighters and patrolmen, respectively. Acting upon the recommendations of outside consultants, the town concluded that efficiency and economy would be promoted by the creation of a consolidated dispatching service that would employ civilian workers instead of uniformed firemen and policemen. The town expected to be able to hire civilian communications center operators for the consolidated service at a considerably lower rate of pay than that to which uniformed personnel were entitled. In 1971, for the new position of communications center operator the town set a salary range of $5810 to $6797, while basic fire dispatchers received an annual salary in the range of $8060 to $9672.

The hearing tribunal found, and the trial court agreed, that the town made a conscious decision to staff the new communications center by hiring women. A joint memorandum from the police chief and the fire chief to the town manager recommended the employment of "10 women civilians in the age bracket of the early or late 50's." Other town personnel acquiesced in this recommendation. Advertisements for the new position were limited to the female advertising section of newspapers. Only women were hired; three men applied but were either unqualified or decided to withdraw.[1]

The eight individual complainants in this case initiated separate actions,[2] starting in November of 1971 and continuing through amendment of com-

[1] One man was subsequently hired, and worked, for one year, at the same salary as the women communications center operators.

[2] The individual complaints, although virtually identical in language, are technically separate complaints. They were heard throughout in consolidated proceedings, but only individual relief was sought by way of back pay and benefits.

plaints until May of 1973, alleging that the town's policy of deliberately hiring lower-paid women as communications center operators to replace higher-paid fire dispatchers constituted discrimination on the basis of sex in violation of § 31-126 of the General Statutes.[3] The pertinent language of § 31-126 provides: "It shall be an unfair employment practice (a) For an employer . . . except in the case of a bona fide occupational qualification or need, because of the . . . sex . . . of any individual . . . to discriminate against him in compensation or in terms, conditions or privileges of employment."

The gravamen of the complaints was that the work of a communications center operator was substantially the same as that of a fire dispatcher. In the original complaints there are repeated references to "the men who previously held the position in which I now work." The evidence developed before the hearing examiner established that, after a short period of transition, no ordinary fire fighters continued to act as dispatchers. Those previously assigned to duties as dispatchers either transferred to active fire-fighting positions or retired. Lieutenant Lloyd S. O'Dell, however, who had been supervisor of the fire dispatchers since 1968, remained at the communications center as a supervisor at a salary based upon the fire dispatcher's pay scale from 1971 until he retired in 1975. The hearing tribunal ultimately found that, despite his title, Lieutenant O'Dell performed substantially the same work as did the women who worked as communications center operators. The hearing tribunal therefore concluded that the continued disparity in rates of pay and benefits between Lieutenant O'Dell

---

[3] The complaints also included allegations of discrimination in the form of harassment, but these were dismissed by the hearing tribunal.

and the communications center operators violated § 31-126 (a). It ordered back pay to the named complainants in "an amount equal to the difference in pay between the [starting] male dispatcher's pay . . . and what the communications center operators actually received as pay," as well as an "amount equal to all other monetary benefits" received by dispatchers but not by communications center operators.

The town of West Hartford, aggrieved by this order, appealed to the Court of Common Pleas. In that court, and in the proceedings here, the claim of unequal pay has become, without objection, the surrogate for the totality of monetary relief awarded by the hearing tribunal. The court below accepted all of the findings of fact of the hearing tribunal; see General Statutes § 31-128 (b); *Board of Education* v. *Commission on Civil Rights,* 153 Conn. 652, 659, 220 A.2d 278 (1966); including the crucial finding that Lieutenant O'Dell "performed essentially the same duties as the female operators although he considered himself the supervisor." The court also agreed with the hearing tribunal's theory that pay differentials between men and women can be evidence of discrimination, and that such differentials are not justifiable if male and female employees actually perform work of substantially equal skill, effort, and responsibility. See *Peltier* v. *City of Fargo,* 533 F.2d 374 (8th Cir. 1976); *Hodgson* v. *Fairmont Supply Co.,* 454 F.2d 490 (4th Cir. 1972); *Hodgson* v. *American Bank of Commerce,* 447 F.2d 416 (5th Cir. 1971); *Veeder-Root Co.* v. *Commission on Human Rights & Opportunities,* 165 Conn. 318, 334 A.2d 443 (1973); *Mize* v. *State Division of Human Rights,* 38 App. Div. 2d 278, 328 N.Y.S.2d 983 (1972), aff'd, 31 N.Y.2d 1032, 294

N.E.2d 851 (1973), modified, 33 N.Y.2d 53, 304 N.E.2d 231 (1973). Nonetheless, the trial court sustained the town's appeal, concluding (1) that the town's hiring practice was not designed to discriminate against women, but rather was in favor of women, and (2) that the status of Lieutenant O'Dell as a lieutenant and as a supervisor was sufficiently distinguishable from that of the communications center operators to warrant a difference in pay scale.[4] The commission on human rights and opportunities in turn has appealed from that judgment to this court.

Before we deal with the merits of the substantive determinations by the trial court, we must address a claim by the town of West Hartford that goes to the essential fairness of the proceedings before the hearing tribunal. The original complaints in this case allege discrimination in pay disparity between communications center operators and *previously employed* fire dispatchers; they do not mention Lieutenant O'Dell. In its original memorandum and order, the hearing tribunal awarded back pay and benefits only until the time that Lieutenant O'Dell became a supervisor, the tribunal having been under the mistaken impression that Lieutenant O'Dell did not become a supervisor until 1973. When the town, on a subsequent hearing, demonstrated that Lieutenant O'Dell had been a supervisor since 1968, long before the civilian communications center had become operational, the hearing tribunal changed its theory and found substantial equivalence between the work performed by Lieutenant O'Dell and by the communications center operators. This court

---

[4] Pay differentials attributable solely to' seniority are not in dispute in this case, since the back pay order stipulated redress derived from a *starting* male dispatcher's pay.

has repeatedly held that it is the charges contained in the complaints filed pursuant to the Fair Employment Practices Act that, under § 31-127 of the General Statutes, "frame the issues to be decided by the hearing tribunal." *Groton* v. *Commission on Human Rights & Opportunities,* 169 Conn. 89, 99, 362 A.2d 1359 (1975); *Veeder-Root Co.* v. *Commission on Human Rights & Opportunities,* 165 Conn. 318, 329, 334 A.2d 443 (1973); cf. *Schaller* v. *Roadside Inn, Inc.,* 154 Conn. 61, 221 A.2d 263 (1966); *Buol Machine Co.* v. *Buckens,* 146 Conn. 639, 153 A.2d 826 (1959).

Tested by the standards of *Groton* and *Veeder-Root,* the ultimate judgment of the hearing tribunal on the claim of unequal pay cannot stand. There is a jurisdictionally fatal variance between complaints alleging discriminatory pay differentials between communications center operators and previous fire dispatchers, and a judgment finding discriminatory differentials because of a higher-paid remaining supervisor. Both the statements of the individual complainants and the statement of the complaint in the original opinion of the hearing tribunal refer to disparity because of the higher pay of men who previously performed substantially the same work as, or less work than, the present communications center operators. These statements of the issues operated to narrow the complaints so that the town cannot fairly be said to have been on notice that it would be required to answer any or all possible kinds of claims with regard to pay and conditions of employment, as the commission argues. As in *Groton* and in *Veeder-Root,* the commission could have pursued its inquiry into Lieutenant O'Dell's actual duties by amending its complaints accordingly, but failed to do so.

Without comparisons based upon the work of Lieutenant O'Dell, all of the hearing tribunal's orders relating to back pay and to benefits must be set aside. No serious effort was made, either in the opinions of the hearing tribunal or in subsequent court proceedings, to prove that the salaries of replaced and departed fire dispatchers should continue to serve as a basis for a finding of discriminatory pay scales. Possibly the 90-day limitation on the filing of complaints, some of which were not initiated until well after these dispatchers had left, accounts for failure to pursue this theory. General Statutes § 31-127[5] and *Veeder-Root,* supra, 331. Moreover, the subsequent hiring of a man to be a communications center operator at the same wages as the women were being paid might have presented an evidentiary obstacle.

In addition to its conclusions about unequal pay, the hearing tribunal made general findings about intent on the part of the town to discriminate against women, and ordered the town to "cease and desist from discriminating against communications center operators on the basis of sex and from reclassifying the jobs of fire dispatcher and communications center operator based upon sex." There was, despite the contrary conclusion of the trial court, substantial evidence to support a finding of intent to discriminate. The town's staff memorandum, and the placement of its advertisements in "Female Help Wanted" columns, contributed heavily to the eventual employment of a cadre of women at a pay scale considerably below that of fire dis-

[5] At the time of this case § 31-127 required complaints to be filed within 90 days after the alleged act of discrimination. The section was amended in 1974 by Public Act No. 74-54 to provide a 180-day period in which to file a complaint.

patchers. Such discrimination cannot be considered to be a benefit, as the trial court held. The absence of responsive proof to support a back pay order does not eliminate the independent finding of discriminatory intent. The individual complainants are entitled therefore to an opinion from the hearing tribunal on their original allegations of discriminatory pay differentials between communications center operators and previous fire dispatchers.

The judgment is therefore reversed and the case is remanded for further proceedings before the hearing tribunal, in accordance with this opinion.

In this opinion the other judges concurred.