[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is an appeal by the plaintiff, the Commission on Human CT Page 8012 Rights Opportunities (Commission), on behalf of the complainant, Kristine Jennings (Jennings), of the decision of its hearing officer in a discrimination claim by the plaintiff against the defendant, Truelove MacLean, Inc.
The complainant alleges that she was discriminated against on the basis of pregnancy in her employment by the defendant, in violation of General Statutes §§ 46a-60(a)(1) (7), in that she was denied a leave of absence from work when she became incapable of successfully performing her work duties at the end of her eighth month of pregnancy, and thereby was constructively terminated from her employment by the defendant.
The plaintiff acted pursuant to General Statutes § 46a-83
in investigating the complaint brought against the defendant by the complainant. A hearing was held on September 25, 1991, pursuant to General Statutes § 46a-83(b), wherein the presiding officer found for the plaintiff. Specifically, the presiding officer found that the defendant discriminated against the complainant on account of pregnancy, in violation of §§ 46a-60(a)(7),46a-60(a)(7)(A), 46a-60(a)(7)(B), and, 46a-60(a)(7)(C). The presiding officer awarded the complainant disability benefits in the amount of $1815.00, and $5000.00 in emotional distress damages.
The plaintiff appeals the decision of the presiding officer pursuant to General Statutes §§ 46a-94a and 4-183. The plaintiff claims that the decision of the presiding officer is in violation of General Statutes §§ 46a-60(a)(1), 46a-60(a)(7),46a-86(a), and, 46a-86(b); that the decision is in excess of the statutory authority of the agency; that the decision is affected by error of law; that the decision is clearly erroneous in view of the reliable, probative and substantial evidence on the whole record; and, that the decision is arbitrary and capricious and characterized by abuse of discretion or clearly unwarranted discretion; all to the prejudice of the plaintiff.
Additionally, the defendant has moved to vacate the presiding officer's monetary award to the complainant, relying on recent developments in our Supreme Court.
The presiding officer's memorandum of decision was mailed to the parties on August 21, 1992. On September 4, 1992, the Commission filed a motion for reconsideration and a motion for articulation concerning the presiding officer's decision. A CT Page 8013 memorandum of decision with further discussion by the presiding officer was mailed to the parties on February 1, 1993, concerning the parties' motions. The presiding officer denied the defendant's motion for reconsideration. In response to the plaintiff's motion for articulation, the presiding officer specified that the defendant had violated §§ 46a-60(a)(7),46a-60(a)(7)(A), 46a-60(a)(7)(B), and, 46a-60(a)(7)(C) of the General Statutes.
A writ, summons, citation, petition and exhibits were served by the plaintiff on Bruce Baker, vice president and person authorized to receive service for the defendant; office of the Secretary of State; and, the State of Connecticut, Commission on Human Rights Opportunities on February 23, 1993. Additionally, a writ, summons, citation, petition and exhibits were served by the plaintiff on Jenson, Baird, Gardner Henry on March 4, 1993; and, on the complainant on March 24, 1993. The plaintiff's Petition of Appeal was filed with the Superior Court in the judicial district of Hartford/New Britain at Hartford on March 9, 1993. The defendant filed an answer on April 13, 1993. The appeal, by way of a motion for transfer filed by the defendant, was transferred to the Waterbury judicial district on May 10, 1993. The plaintiff filed a certification of record on July 1, 1993. The parties filed numerous briefs and the appeal was heard by the court on April 19, 1995.
The facts as found in the record are set forth hereinafter. The complainant was employed as a secretary with the defendant from March 1981 to December, 1984. In November, 1984, when she was nearing her eighth month of pregnancy, she considered herself no longer capable of successfully performing her work duties due to fatigue and back strain. She approached the personnel manager of the defendant, Clevia Slason, at that time to request a leave of absence due to this condition. She did not use the term "disabled" when she spoke to Ms. Slason. Ms. Slason informed the complainant that there was no company policy allowing for maternity leave, and therefore, the complainant would not be allowed to take such a leave of absence. When the complainant stated that she intended to return to work, probably preferring part-time work, for the defendant after three months, Ms. Slason informed her that she would not be entitled to come back, that her job would not be held for her, and that she could reapply for a position, but her rehiring would depend on available positions at the time of her reapplication. Ms. CT Page 8014 Slason stated at the hearing before the Human Rights and Opportunities hearing officer that Mrs. Jennings would be given consideration because she was a good employee for any vacant position.
The complainant was dissatisfied with the information she was provided by Ms. Slason. She was aware of other employees who had been granted leaves of absence by the defendant due to non-pregnancy related illnesses. She next approached Harold Hughes, the defendant's treasurer and person in charge of financial affairs, including insurance benefits. The complainant once again did not use the term "disabled". Mr. Hughes informed her that everything Ms. Slason had told her was correct.
The complainant left the defendant's employ on December 14, 1984 and did not return. She filed for unemployment benefits under the category "voluntary termination". She took a part-time job at an answering service approximately six months after the birth of her child, who was born on January 20, 1985. After approximately one year, she left the answering service position and took a part-time position with First Federal Bank, where she is presently employed. In the latter position, she worked between seventeen and twenty-five hours per week.
The complainant filed a complaint with the plaintiff concerning this matter. A hearing was held before a presiding officer, who ultimately found that the defendant violated General Statutes §§ 46a-60(a)(7), 46a-60(a)(7)(A), 46a-60(a)(7)(B), and, 46a-60(a)(7)(C). He awarded the complainant $1815.00 in disability benefits, and $5000.00 in emotional distress damages as previously stated.
The plaintiff challenges the presiding officer's decision on the ground that it violates General Statutes § 4-183 in the following ways:
(a) the Presiding Officer's conclusion that the evidence did not establish a violation of CONN. GEN. STAT. § 46a-60(a)(1) is clearly erroneous in view of the reliable, probative and substantial evidence of record;
(b) the Presiding Officer's conclusion that the evidence did not establish a violation of CONN. GEN. STAT. § 46a-60(a)(7)(D) is clearly erroneous in view of the reliable, CT Page 8015 probative and substantial evidence of record;
(c) the Presiding Officer violated CONN. GEN. STAT. § 46a-86(a) by failing to order Truelove and Maclean, Inc. to cease and desist from the discriminatory employment practices found to have been committed and by failing to order affirmative action to effectuate the purposes of Chapter 814c of the Connecticut General Statutes;
(d) the Presiding Officer's failure to award any period of back pay violates CONN. GEN. STAT. § 46a-86(b), which mandates the award of back pay upon the finding that a discriminatory employment practice has been committed. Accordingly, the Presiding Officer did not have discretion to deny back pay;
(e) the Presiding Officer failed to appreciate that Truelove and Maclean, Inc. failed to carry its burden of proof that Ms. Jennings did not mitigate her damages. Indeed, the absence of evidence on the issue of mitigation leaves intact the normal presumption that mitigation efforts were made and leads to a conclusion that Truelove and Maclean, Inc. waived any right to object to an award of back pay due to failure to mitigate on Ms. Jennings' part;
(f) the Presiding Officer violated CONN. GEN. STAT. § 46a-86(b) by failing to order the reinstatement of Ms. Jennings;
(g) the Presiding Officer violated CONN. GEN. STAT. § 46a-86(b) by failing to order Truelove and Maclean, Inc. to reimburse the CT Dept. of Labor for unemployment compensation benefits paid to Ms. Jennings; and
(h) the Presiding officer violated CONN. GEN. STAT. § 37-3a
by failing to provide for the accrual of interest from the date of notice of his order at the lawful rate.
Strict compliance with statutory prerequisites is necessary to vest the court with jurisdiction. Hillcroft Partners v.CHRO, 205 Conn. 324, 326, 533 A.2d 852 (1987); Rogers v. CHRO,195 Conn. 543, 550, 489 A.2d 368 (1985). The present appeal is governed under the Uniform Administrative Procedure Act ("UAPA"), General Statutes § 4-183, et seq.
The plaintiff asserts that it is aggrieved by the decision of the Presiding Officer in that: CT Page 8016
(a) Truelove and Maclean, Inc., despite substantial evidence to the contrary, has been found not to have committed a discriminatory practice under CONN. GEN. STAT. § 46a-60(a)(1);
(b) Ms. Jennings, despite substantial evidence to the contrary, has been denied a full and fair remedy under CONN. GEN. STAT. § 46a-86 for the wrongful, discriminatory acts of Truelove and Maclean, Inc.; and
(c) the improper application of the law to the facts of this case by the Presiding Officer, if not corrected, will thwart the CHRO's statutory command to enforce the antidiscrimination laws of the State of Connecticut in not only this case, but set adverse precedent for other cases as well.
An appealing party must be aggrieved. General Statutes §§46a-94a and 4-183. The complaint must allege aggrievement and the reviewing court must determine whether aggrievement has been established. Sprague v. CHRO, 12 Conn. Law Trib. No. 29, p. 17 (Super.Ct., June 5, 1986, Purtill, J.). The court finds that the plaintiff has sufficiently pleaded and established aggrievement in this case.
Failure to file a timely appeal in accordance with § 4-183
deprives the court of jurisdiction. Hillcroft Partners v. CHRO,
supra, 205 Conn. 324, 326. The court finds that the appeal in this case was timely served and filed within the forty-five day requirement under § 4-183(c).
Failure to follow the procedures outlined in General Statutes § 46a-82, et seq., will foreclose judicial relief.Osborn v. Rocklen Automotive Parts Service, Inc., 4 Conn. App. 423,426, 494 A.2d 622 (1985). See also Greater BridgeportTransit District v. CHRO, 211 Conn. 129, 131, 557 A.2d 925
(1989). This court finds that the procedures outlined in § 46a-82
et seq., have been properly followed in this matter.
The charges contained in the complaint filed pursuant to the statute frame the issues to be decided by the hearing tribunal. West Hartford v. CHRO, 176 Conn. 291, 297,407 A.2d 964 (1978). A trial court's review is governed by the Uniform Administrative Procedures Act which limits the scope of judicial review in administrative appeals. Miko v. CHRO, 220 Conn. 192,200, 596 A.2d 396 (1992). [T]he rule of "substantial evidence" CT Page 8017 governs the review of administrative fact finding, and, in determining whether an administrative finding is supported by "substantial evidence", the reviewing court must defer to the agency's assessment of the witnesses' credibility. Id. The question is not whether the trial court would have reached the same conclusion, but whether the record before the agency supports the action taken. Id., 201.
The hearing officer [is] required by law to base her [or his] decision upon all of the evidence introduced and to apply all provisions of law. Pelletier v. White, 33 Conn. Sup. 769,772, 371 A.2d 1068 (App. Sess. 1976). A decision which ignore[s] a clearly applicable statute is contrary to law and cannot stand. Id.
Although not bound by federal interpretation of Title VII of the Civil Rights Act of 1974, § 703(a)(1); 42 U.S.C. § 2000e-2(a), the federal counterpart to Connecticut's statute, Connecticut courts often look to federal employment discrimination law for guidance in enforcing the Connecticut anti-discrimination statute. State v. CHRO, 211 Conn. 464, 470,559 A.2d 1120 (1989). See also Civil Service Commission v. CHRO,195 Conn. 226, 230, 487 A.2d 201 (1985) ("In determining the scope of relief authorized by [the state fair employment practices statute] we are properly guided by the case law surrounding federal fair employment legislation.")
A hearing officer not only has the power but the duty to render a decree which will eliminate discriminatory effects of the past and bar discrimination in the future. Id., 230.
The Superior Court has jurisdiction to issue injunctive relief. See General Statutes § 46a-89 et seq.
The hearing officer found that the defendant's actions towards the complainant were discriminatory and violated the law, namely Connecticut General Statutes § 46a-60(a)(7)A, B and C. Neither the plaintiff nor the defendant have contested the hearing officer's factual findings in this case. Rather, the plaintiff argues that the hearing officer did not accurately apply the law to the findings of fact that were enumerated. Therefore, the first issue on appeal in this case is specifically what law or laws were violated by the defendant.
The plaintiff next argues that the Hearing Officer misapplied CT Page 8018 the law in determining the proper calculation of damages in this case. The defendant argues that the Hearing Officer did not misapply the law of damages in such a case as this. The defendant, however, further moves to vacate and set aside the complainant's monetary award based on the recent cases ofBridgeport Hospital v. Commission on Human Rights Opportunities,232 Conn. 91, ___ A.2d ___ (1995); and, Fenn ManufacturingCompany v. Commission on Human Rights Opportunities, 232 Conn. 117, ___ A.2d ___ (1995). Therefore, the court must secondly determine whether damages in this case were properly determined according to law. The plaintiff's claims will be discussed in the order they are presented.[1]
 A. The Hearing officer's conclusion that the evidence did not establish a violation of General Statutes § 46a-60(a)(1) is clearly erroneous in view of the reliable, probative and substantial evidence of record.
Upon issuance of the hearing officer's original memorandum of decision, the plaintiff filed a motion for articulation which stated, "[t]he Commission on Human Rights and Opportunities respectfully requests that the Hearing Officer clarify his decision by specifically reciting what section o[r] sections of the Connecticut General Statutes respondent has been found to have violated." In the hearing officer's "memorandum of decision — further discussion", the officer stated, "[t]he original findings followed very closely the request of the Commission, including the sections under which it is claimed will support this decision and those are the sections used, most specifically sections 46A-60(a)(7) and 46A-60(a)(7)ABC.
The plaintiff argues that the hearing officer should have found that the defendant also violated § 46a-60(a)(1), which states,
 (a) It shall be a discriminatory practice in violation of this section: (1) For an employer by him [or her]self or his [or her] agent, except in the case of bona fide occupational qualification or need to discriminate against [any individual] in compensation or in terms, conditions or privileges of employment because of the individual's . . . sex . . . ."
The Hearing Officer heard this matter and did not find a CT Page 8019 violation of this section of the statute. The Superior Court when reviewing the findings of a hearing office cannot substitute its judgment for that of the hearing officer just because it may have reached a different conclusion if it were the trier unless on the face of the record the facts and the law do not support the conclusions reached by said hearing officer. That is not the situation here.
 B. The Hearing Officer's conclusion that the evidence did not establish a violation of General Statutes § 46a-60(a)(7)(D) is clearly erroneous in view of the reliable, probative and substantial evidence of record.
General Statutes § 46a-60(a)(7)(D) states,
 [i]t shall be a discriminatory practice in violation of this section . . . [f]or an employer . . . to fail or refuse to reinstate the employee to her original job or to an equivalent position with equivalent pay and accumulated seniority, retirement, fringe benefits and other service credits upon her signifying her intent to return unless, in the case of a private employer, the employer's circumstances have so changed as to make it impossible or unreasonable to do so . . . .
The Hearing Officer found that,
 [i]n late November 1984, the complainant initiated a discussion with Clevia Slason to request a leave of absence for pregnancy. The complainant felt that she could no longer be productive at her job. . . . At that time, Ms. Slason was Personnel Manager. She had held the job for some thirteen years pr[e]viously and stated that she was familiar with equal opportunity and antidiscrimination law and was partly responsible for developing respondent's personnel policies . . . . She had been aware of the complainant's pregnancy since midsummer. . . . Ms. Slason advised the complainant that the respondent did not provide a leave of absence due to pregnancy. Further, Ms. Slason never apprised the complainant of what benefits, if any, were available or what length of leave would be agreeable to the respondent. . . . Ms. Slason was unaware of whether the respondent's medical CT Page 8020 policy even provided for maternity benefits. . . . Ms. Slason was aware that the complainant was pregnant, tired easily [at] work, that this exhaustion was due to her pregnancy, and that the complainant was leaving for that reason . . . . When the complainant asked if she could return to work after [t]he delivery, she was told by Ms. Slason that she would have to reapply for the position and that if one were available she would be given consideration. . . . The complainant intended on returning to work following the birth of her child. . . .
According to the Hearing Officers findings, the complainant signified her intent to return, and further, that the complainant was told she would have to reapply for her position and that she would be given consideration.[2]
The Hearing Officer's findings on this issue were not erroneous. The complainant never made any attempt to reclaim her position at the defendant's company. She did not present herself and ask that she be given her former position or any position, nor did she fill out an application to seek a position of employment with the defendant after her child was born. To find that the defendant violated § 46a-60(a)(7)(D) under these circumstances would be unfair. The court cannot presume the defendant knew the complainant wanted her full time position back when she never made the effort to fill out a job application as she was told by the defendant she would have to do. Furthermore, the evidence brought out in front of the Hearing Officer was that since she left the defendant's company, she has only worked part-time and not full time as she had prior to her leaving the defendant employment.
 C. The Hearing Officer violated General Statutes § 46a-86(a) by failing to order the defendant to cease and desist from the discriminatory employment practices found to have been committed and by failing to order affirmative action to effectuate the purposes of Chapter 814c of the Connecticut General Statutes.
This claim by the plaintiff has not been briefed, and, therefore, is deemed abandoned. Frommer v. Freedom of InformationCommission, 36 Conn. App. 155, 156, ___ A.2d ___ (1994).
D. The Hearing Officer's failure to award any periodCT Page 8021 of back pay, failure to order the reinstatement of the complainant, and failure to order the defendant to reimburse the Connecticut Department of labor for unemployment benefits paid to the complainant, violates General Statutes § 46a-86(b), which mandates such remedies. Additionally, the defendant did not meet its burden in proving lack of mitigation of damages on the part of the complainant on the issue of back pay.
General Statutes § 46a-86(b) states,
 [i]n addition to any other action taken hereunder, upon a finding of a discriminatory practice, the hearing officer may order the hiring or reinstatement of employees, with or without back pay, or restoration to membership in any respondent labor organization, provided liability for back pay shall not accrue from a date more than two years prior to the filing or issuance of a complaint, and, provided further, interim earnings, including employment compensation and welfare assistance or amounts which could have been earned with reasonable diligence on the part of the person to whom back pay is awarded shall be deducted from the amount of back pay to which such person is otherwise entitled. The amount of any such deduction for interim unemployment compensation or welfare assistance shall be paid by the respondent to the commission which shall transfer such amount to the appropriate state or local agency.
The plaintiff initially argues that under § 46a-86(b), the Hearing Officer was required to order back pay to the complainant, and to reinstate her. The Hearing Officer declined to do so.[3] The term "may" in a statute indicates the legislature's intent that the action is discretionary. In Re Donna M.,33 Conn. App. 632, 646, 637 A.2d 795 (1994). Moreover,
 [t]his use of "shall" and "may" in the same statute, which is commonly mandatory and directory in connotation is a factor that evidences affirmative selectivity of terms with specific intent to be distinctive in meaning. The words "shall" and "may" must then be assumed to have been used with discrimination and a full awareness of the difference in their ordinary CT Page 8022 meanings. . . .
(Citations omitted; internal quotation marks omitted.) BuildersService Corporation v. Planning Zoning Commission, 208 Conn. 267,304, 545 A.2d 530 (1988).
The plaintiff next maintains that federal law requires that the complainant be awarded back pay and reinstatement. Our Supreme Court has held that, "[i]n determining the scope of relief authorized by the [state fair employment practices statute], we are properly guided by the case law surrounding federal fair employment legislation." Civil Service Commissionv. CHRO, supra, 195 Conn. 226. A similar issue regarding back pay was before the United States Supreme Court in AlbemarlePaper Company v. Moody, 422 U.S. 405, 95 S.Ct. 2362,45 L.Ed.2d 280 (1975). In that case, the district court denied the complainants' request under a Title VII claim for back pay, and the Court stated,
 [t]he petitioners contend that the statutory scheme provides no guidance, beyond indicating that backpay awards are within the District Court's discretion. We disagree. It is true that backpay is not an automatic or mandatory remedy; like all other remedies under the Act [Title VII], it is one which the courts "may" invoke. The scheme implicitly recognizes that there may be cases calling for one remedy but not another, and — owing to the structure of the federal judiciary — these choices are, of course, left in the first instance to the district courts. However, such discretionary choices are not left to a court's inclination, but to its judgment; and its judgment is to be guided by sound legal principles. . . . The power to award backpay was bestowed by Congress, as part of a complex legislative design directed at a historical evil of national proportions. A court must exercise this power in light of the large objectives of the Act. . . . That the court's discretion is equitable in nature . . . hardly means that it is unfettered by meaningful standards or shielded from thorough appellate review. . . .
 It is true that [e]quity eschews mechanical rules . . . [and] depends on flexibility. . . . But when Congress invokes the Chancellors conscience to further CT Page 8023 transcendent legislative purposes, what is required is the principled application of standards consistent with those purposes and not equity [which] varies like the Chancellor's foot. Important national goals would be frustrated by a regime of discretion that produce[d] different results for breaches of duty in situations that cannot be differentiated in policy. . . .
 It is also the purpose of Title VII to make persons whole for injuries suffered on account of unlawful employment discrimination. This is shown by the very fact that Congress took care to arm the courts with full equitable powers. For it is the historic purpose of equity to secur[e] complete justice. . . . [W]here federally protected rights have been invaded, it has been the rule from the beginning that courts will be alert to adjust their remedies so as to grant the necessary relief. . . . [W]here a legal injury is of an economic character [t]he general rule is, that when a wrong has been done, and the law gives a remedy, the compensation shall be equal to the injury. The latter is the standard by which the former is to be measured. The injured party is to be placed, as near as may be, in the situation he [or she] would have occupied if the wrong had not been committed. . . .
 The make whole provision of Title VII is made evident by the legislative history. The backpay provision was expressly modeled on the backpay provision of the National Labor Relations Act. Under that Act, [m]aking workers whole for losses suffered on account of unfair labor practice is part of the vindication of the public policy which the Board enforces. . . . We may assume that Congress was aware that the Board, since its inception, has awarded back pay as a matter of course — not randomly or in the exercise of a standardless discretion, and not merely where employer violations are peculiarly deliberate, egregious, or inexcusable. Furthermore, in passing the, Equal Employment Opportunity Act of 1972, Congress considered several bills to limit the judicial power to award backpay. These limiting efforts were rejected, and the backpay provision was re-enacted substantially in its original form. A Section-by-Section CT Page 8024 Analysis introduced by Senator Williams to accompany the Conference Committee Report on the 1972 Act strongly reaffirmed the "make whole" purpose of Title VII:
 "The provisions of this subsection are intended to give the courts wide discretion exercising their equitable powers to fashion the most complete relief possible. In dealing with the present section 706(g) the courts have stressed that the scope of relief under that section of the Act is intended to make the victims of unlawful discrimination whole, and that the attainment of this objective rests not only upon the elimination of the particular unlawful employment practice complained of, but also requires that persons aggrieved by the consequences and effects of the unlawful employment practice be, so far as possible, restored to a position where they would have been were it not for the unlawful discrimination." 118 Cong. Rec. 7168 (1972).
 As this makes clear, Congress' purpose in vesting a variety of "discretionary" powers in the courts was not to limit appellate review of trial courts, or to invite inconsistency and caprice, but rather to make possible the fashion[ing] [of] the most complete relief possible.
 It follows that, given a finding of unlawful discrimination, backpay should be denied only for reasons which, if applied generally, would not frustrate the central statutory purposes of eradicating discrimination throughout the economy and making persons whole for injuries through past discrimination. The courts of appeals must maintain a consistent and principled application of the backpay provision, consonant with the twin statutory objectives, while at the same time recognizing that the trial court will have the keener appreciation of those facts and circumstances peculiar to particular cases. CT Page 8025
 The District Court's stated grounds for denying backpay in this case must be tested against these standards. The first ground was that Albemarle's breach of Title VII had not been in "bad faith." This is not a sufficient reason for denying backpay. Where an employer has shown bad faith — by maintaining a practice which he [or she] knew to be illegal or of highly questionable legality — he [or she] can make no claims whatsoever on the Chancellor's conscience. But, under Title VII, the mere absence of bad faith simply opens the door to equity; it does not depress the scales in the employer's favor. If backpay were awardable only upon a showing of bad faith, the remedy would become a punishment for moral turpitude, rather than a compensation for workers' injuries. This would read the "make whole" purpose right out of Title VII, for a workers' injury is no less real simply because his [or her] employer did not inflict it with "bad faith." Title VII is not concerned with the employer's "good intent or absence of discriminatory intent" for "Congress directed the thrust of the Act to the consequences of employment practices, not simply the motivation.". . . To condition the awarding of backpay on a showing of "bad faith" would be to open an enormous chasm between injunctive and back pay relief under Title VII. There is nothing on the face of the statute or in its legislative history that justifies the creation of drastic and categorical distinctions between those two remedies.
(Citations omitted; emphasis in original; internal quotation marks omitted.) Albemarle Paper Company v. Moody, supra,422 U.S. 415-423.
In Civil Service Commission v. CHRO, supra, 195 Conn. 230, the Court stated,
 the victim of a discriminatory practice is to be accorded his [or her] rightful place in the employment scheme, that is, he [or she] has a right to be restored to the position he [or she] would have attained absent the unlawful discrimination. . . . [R]elief will not be provided the injured party by ordering the displacement or bumping of innocent incumbent employees. . . . [I]f there are no positions CT Page 8026 available that are commensurate with the complainant's just expectations, the hearing officer may order, where appropriate, other job-related relief. . . . Such an order may include retroactive and prospective monetary relief.
In this matter, there is no evidence whatsoever that Mrs. Jennings ever took a full time position after she left the defendant's employment in December 1984. Since her position at the defendant's company was full time, she would have had to present evidence that she worked full time for some period of time since December 1984 in order to be entitled to back pay and/or reinstatement to her old position or some such similar position with the defendant. Therefore, the court does not find that the complainant is entitled to back pay or reinstatement to her previous position with the defendant under the facts of this case.
 E. The Hearing Officer violated General Statutes § 46a-86(b) by failing to order the defendant to reimburse the Connecticut Department of Labor for unemployment compensation benefits paid to the complainant.
The plaintiff argues that the defendant should be required to repay the unemployment compensation benefits received by the complainant during the time in which she was not working. General Statutes § 46a-86(b) states that where back pay is awarded, the employer will subtract the amount of the unemployment benefits paid to the complainant, and forward the amount to the appropriate agency. Since no back pay was awarded to the complainant by the court, this claim is rendered moot.
 F. The Hearing Officer violated General Statutes § 37-3a by failing to provide for the accrual of interest from the date of notice of his order at the lawful rate.
This claim was not adequately briefed by the plaintiff, and, therefore, is deemed abandoned. Frommer v. Freedom ofInformation Commission, supra, 36 Conn. App. 156.
Finally, the defendant has moved to vacate the monetary award presented to the complainant by the presiding officer based on the recent Connecticut Supreme Court cases of BridgeportCT Page 8027Hospital v. CHRO, supra, 232 Conn. 91, and, Fenn ManufacturingCompany v. CHRO, supra, 232 Conn. 117.
First, the defendant seeks to have the court vacate the complainant's emotional distress damage award. The defendant is correct in that Bridgeport Hospital and Fenn Manufacturing cases are controlling over the issue of emotional distress damages, and, accordingly, the emotional distress damages awarded to the complainant must be vacated.
The defendant further seeks to vacate the award to the complainant of disability insurance benefits based on these same cases. The aforementioned cases donor prohibit this award. In fact, the Court in Bridgeport Hospital stated their approval of the Fenn Manufacturing trial court opinion, wherein the trial court stated, "whatever remedy is fashioned for the employee [it is to] be designed to return him or her to the same economic status he or she would have had in the workplace if unlawful discrimination never occurred." (Internal quotation marks omitted.) Bridgeport Hospital v. CHRO, supra, 232 Conn. 111. In the present case, had the discriminatory acts of the defendant not occurred, the complainant would have received these disability benefits, and, accordingly, this benefit award should not be vacated.
Judgment may enter in accordance with this decision.
WILLIAM J. SULLIVAN, J.